# REPORTS

OF

## CASES ARGUED AND DETERMINED,

## JANUARY TERM, 1845.

---

### ALEXANDER GRAHAM v. JOHN LOCKHART.

1. A deed of trust operative as a security for the payment of money, is not fraudulent *per se*, on account of the reservation of uses to the grantor.

2. *Quere?* Whether a deed conveying property for the benefit of sureties, and fixing the law day of the deed to a time subsequent to the maturity of the debts, for which the sureties are bound, is operative as a conveyance, without the assent of the sureties.

3. So far as the particular creditor is concerned, the debtor, with his assent may stipulate that the effects conveyed may be continued, in trade or planting, for a definite or indefinite period, but such a stipulation cannot prevent any other creditor from his right to sell the resulting trust of the debtor, in satisfaction of his execution.

4. *Quere?* Whether a debtor, by the mortgage of his perishable personal estate, for the security of one creditor, can prevent others from reducing that estate to money, and thus to determine the risk there always is, of its destruction or deterioration in value.

5. The powers of a Court of Equity are sufficient to prevent injury to the mortgage creditor, as well as injustice to the one who has no security.

6. Assuming that a deed of trust conveying property as a security, for the benefit of sureties, and reserving the use of perishable effects, which may be consumed in the use, has been made operative by the assent of the beneficiaries, yet no other creditor is bound by the contract between those parties. His right is to have all the debtor's estate reduced, at once, to its money value, and if the secured creditors choose to become the purchasers, and thus continue their relation with the debtor, a Court of Equity is competent to let them in to the extent of their debts.

7. In claims interposed under the statute, to property which is levied on as belonging to the defendant in execution, the bond required to be given may

2

be executed by those claiming the beneficial interest in the property, as well as by him who is invested with the title.

8. To let in a deed as evidence, it is not essential that the subscribing witness should remember its execution. His statement that his superscription as a witness was genuine, and that it would not have been placed there unless he had been called to witness it, is sufficient.

9. Where the intention is declared to attack a deed of ¸trust for fraud, it is competent for the trustee to show that his action, with reference to the trust property, has been in accordance with the deed, for the purpose of rebutting any presumption which might arise from the acts of the grantor.

10. Where debts are described in a deed of trust, as the consideration upon which it is founded, a misdescription, either as to the names of sureties, dates, or sums, will not affect the validity of the deed, and evidence may be given of debts created by notes, &c. variant in some respect from those described in the deed.

11. Where notes and other written securities are described as the consideration of a deed of trust, parol evidence may be given of them, without producing them to the jury, when they are not within the control of the party offering the evidence.

12. The admissions of a trustee having no beneficial interest in the property conveyed to him, cannot be given in evidence to defeat a deed of trust executed solely for the benefit of others.

13. Where one of the trusts of a deed was to pay certain outstanding judgments, and afterwards these were superseded by writs of error bonds, it is competent for the trustee to show their payment by him, after their affirmance.

Writ of Error to the Circuit Court of Perry.

Claim interposed by Lockhart to certain property levied by virtue of a writ of *fi. fa.* at the suit of Graham against A. B. W. Hopkins. The *fi. fa.* was issued the 6th of February, 1843. The claim bond was not executed by Lockhart, though his name is inserted in its caption as one of the obligors. At the trial the plaintiff moved the Court to dismiss the claim for this reason; but the Court refused to do so, deciding, that as the claimant was a mere trustee his name as an obligor was unnecessary, if the bond, in other respects, was sufficient, and executed by those beneficially interested in the trust.

In the further progress of the trial, the claimant offered in evidence a deed executed by Hopkins and Lockhart, dated the 1st November, 1841. It recites that the indenture is made by and between Hopkins of the first part, Lockhart of the second,

and Samuel G. McLaughlin, Henry C. Lea, and "other persons," of the third part, and purports to be in consideration of the sum of five dollars, paid by Lockhart, and the " debts as security," thereinafter mentioned. It then conveys to Lockhart thirty-five slaves by name, 1080 acres of land, of which the several parcels are described. "And also all his stock of horses, mules, cattle, hogs and stock of any kind; his corn, cotton, at that time gathered or ungathered; his farming utensils, all his household and kitchen furniture, carriage, sulky, and three waggons, and harness of each; all his notes, actions, accounts, suits, judgments or claims, in or out of Court, after paying the expenses on the same; all books, papers, rights of action, so far as the same can be conveyed; all right or interest which he had, either at law or equity, to the same, whether interested as an individual or as one of the firm of Hopkins, McLaughlin & Co., or Hopkins & Tarrant ; all interest which he had in a mortgage assigned to him on the tavern establishment in the town of Greensborough, called the Warrior House, formerly or now, with all its lots, appurtenances, &c.; all his real and personal property, after paying off the judgments heretofore rendered against him." It then proceeds to declare a trust in these terms: "All of which is in trust, nevertheless, for the satisfaction of my securities and other creditors, and on the following express conditions, to wit: that in the event that any one or more of the debts herein enumerated, or any part of any or all, should not be paid off, settled, or in some way, by me, or by my agent, or representatives, satisfied by the 1st day of January, 1843, then and in that event, the said Lockhart, or his legal representative, shall, after having given thirty days previous public notice, on the Court House door of Perry county, and in one or more newspapers, if any be published at the time in said county, put up and expose to sale, at public outcry, to the highest bidder, for cash, the whole, or any portion, of the previously described property, and pay off the whole or any portion of the said debts, which remain at the time unpaid. The undersigned, A. B. W. Hopkins to retain possession of the said property for the purpose of aiding all the time in effecting the object of this deed: and the proceeds to be applied as aforesaid, in the same way as the balance of the property—paying the incidental expenses—and the said Lockhart, as trustee as aforesaid, or representative, to have the right to

possession at all times, whenever he deems it necessary for the security of said debts."

It then proceeds to enumerate the debts to be secured and paid. These are thus described:

One note for the sum of $8,041 86, payable to George W. Johnson & Co., made by Hopkins, H. C. Lea, S. G. McLaughlin, A. B. Moore, and others; due 25th Dec. 1841.

One note for between $2,500 or $3,000, being an extended, or part of an extended debt, with A. W. Fletcher and C. J. Philips, payable to the Bank of the State of Alabama.

One note payable at the Bank of Mobile, but discounted at the Branch of the Bank of the State of Alabama at Mobile, made by Hopkins with A. W. Fletcher and R. B. Walthall as his securities, for near $2,000, due about the 1st February, 1841.

One note made by Hopkins, with A. W. Fletcher as security, for about $450, payable to Jesse Crone.

One note, due about the 1st of January, 1841; made by Hopkins, for $275, with A. W. Fletcher as security, payable to P. W. Sink, guardian, &c.

One note made for the benefit of Hopkins, by W. J. Johnson, with R. B. Walthall as security, for about $450, due about the 1st January, 1842.

To pay to Mildred H. Williams, or her heirs, a note payable to her for $3,000, due the 1st January, 1843, made by Hopkins.

One note made by Hopkins, payable to S. G. McLaughlin, for $1,000, or upwards, due about the 1st January, 1842.

The balance of a note due Nancy Lea; due 1842, for about $1,300.

One note payable to Wiley, Lane & Co. for $1,423 04, dated 15th April, 1840, due eleven months after date, with current rate of exchange when due, made by Tarrant & Hopkins.

One bill of exchange, made by the same, for $1,007 51, dated 8th June, 1840, due sixty days after date, drawn on Wm. Stringfellow, Mobile, Ala.; provided these two last debts should not be paid off by a deed heretofore made by Hopkins to L. G. Tarrant, for that purpose, among other things.

Four notes amounting in all to $1,000, payable to E. D. King. made by the same.

It then proceeds thus: " And in order that the property and

effects above named, may produce the greatest amount for the purpose herein specified, the said Lockhart is hereby authorized to order applied, or apply, the present crop to the payment of the executions or judgments now standing against me; for any of which any portion of said property is liable to be levied on, or sold; to control my books, papers, property aforesaid; to sell and do as herein directed; to sell and do any thing, and every thing, necessary to carry the object of this deed into effect."

It is also required of said trustee, that should there be a deficiency in the payment of the debts of the late firm of Hopkins McLaughlin & Co., out of the effects of the said firm, then also to pay one-third part, which is my portion of said deficiency, or debts.

The said property may be sold on the premises, or at the Court House door of Perry county, as may be deemed best by the said Hopkins. And $1,000 of the demands in the hands of Lea & Towns, may, under the direction of the said Hopkins, be applied by said trustee, to such other debts or demands as may be against said Hopkins."

The claimant called as a witness, one Godden, whose name appears to the deed as a subscribing witness; he stated that his signature was genuine, as was also that of M. A. Lea, another of the subscribing witnesses, since dead, but that he had no distinct recollection of ever having seen the parties sign it, or execute it, or of ever having heard them acknowledge that they they did so; that he had a faint recollection that some such instrument had been signed by him as a witness, one afternoon, some time before, but except from the genuineness of his signature to the deed, he could not say that he knew any thing positive about it. The plaintiff objected to the reading of the deed; whereupon the claimant asked the witness, if he did not know it was not his custom to sign such instruments without having seen them executed, or having heard them acknowledgd by the the parties, and whether he was not confident, that one or the other had been done, before he put his signature thereto. The plaintiff objected to this question, but the Court allowed the witness to answer it. The answer was in the affirmative, and the Court allowed the deed to be read, notwithstanding the plain-

tiff continued his objection. Afterwards the deed was proved by another of the subscribing witnesses.

The claimant offered evidence of a notice and sale under the deed, as well as other proceedings under it, pursuant to its provisions, but subsequent to the levy of the plaintiff's *fi. fa.*; to this the plaintiff objected, but the Court allowed the evidence, on the ground that the notice of sale, if in accordance with the deed, might go to the jury as evidence to rebut the idea of fraud, for which the plaintiff declared it was his intention to assail the deed.

The claimant offered to give in evidence an original execution, in favor of the Bank of the State of Alabama, against A. B. W. Hopkins, N. W. Fletcher and Charles J. Philips, from the office of the Clerk of the County Court of Tuskaloosa county, for $2,489 70, besides costs; for the purpose of sustaining that part of the deed which asserts the existence of a note described in the deed, as due that bank. To this the plaintiff objected, on the ground that the execution was not duly certified; and also, because it contained no sufficient proof of the identity of the debt to be levied, with that described in the deed. It was allowed to go to the jury. The claimant offered in evidence, a note due 1st June, 1841, to P. L. Sink, made by Hopkins and N. W. Fletcher, for $275, without any other proof of its identity with a similar note described in the deed, than such as arose from the genuineness of the signatures. This note was produced from the files of Perry Circuit Court, in a cause in which judgment had been rendered.

He also offered to prove, by William J. Johnson, the existence and contents of a note made for the benefit of Hopkins, by W. J. Johnson, with R. B. Walthall as his security, for about $450, due about the 1st January, 1842, without producing the note, or accounting for its absence, except that the note was delivered to its payee. The witness was allowed to testify, and stated that he himself had executed the note for Hopkins's benefit.

The Claimant offered in evidence, a note made by Hopkins to Mildred H. Williams, or her heirs, for $3,000, due 1st January, 1843, dated —— February, 1841, and proved Hopkins' signature. It was also in evidence that Mildred H. Williams, at the date of the note, and time of trial, was a married woman.

He also offered a note made by Hopkins to L. Y. Tarrant, indorsed by the latter to S. G. McLaughlin, for $1,284, due 1st January, 1843, for the purpose of sustaining that part of the deed which speaks of a note to McLaughlin, for $1,000, or upwards, due about the 1st January, 1842, and proved by Tarrant, that when it was executed, it was designed for McLaughlin's benefit.

The claimant also offered in evidence, the indorsement of a writ taken from the files of the Circuit Court of Perry county, containing the description of a note by Tarrant & Hopkins to Wiley, Lane & Co., for $1,423 04, dated 15th April, 1840, due eleven months after date, with current rate of exchange, without producing, or accounting for the absence of the note, otherwise than the testimony of the clerk, that it was not on file, and that judgment on it had been rendered.

Also, three notes made by Hopkins to E. D. King, all dated 21st August, 1841, one for $200 75, due 1st January, 1842; one for the same sum, due 1st January, 1844, and the third for $700, with interest from date, one half payable 1st January, 1842, and the other half payable 1st January, 1843, and proved the signature, and that they were obtained by him from King's possession.

The claimant likewise offered a note made by S. G. McLaughlin, Hopkins and N. W. Fletcher, for $1,000, due 1st June, 1842. To this the plaintiff objected, because there was no proof that Hopkins and Fletcher were securities, and because that described in the deed, is said to be due 1st January, 1843.

All this evidence was objected to by the plaintiff, but admitted by the Court, and thereupon the plaintiff excepted. The plaintiff, in cross-examining one of the claimant's witnesses, asked what the claimant said and admitted about the deed of assignment, in which he was trustee. The claimant objected to this, and the Court ruled that Lockhart, being only a trustee, and not having executed any bond for the trial of the claim, was a competent witness for the plaintiff, if willing to be sworn, and that no evidence of his sayings could be introduced.

The claimant, in reference to that part of the deed which is supposed to require the trustee to pay off all judgments rendered against the grantor, before the making of the deed, introduced sundry judgments, which had been recovered before its

date, but which had been superseded afterwards by writs of error to the Supreme Court, where they were afterwards affirmed against the principal and securities in the writ of error bonds; and also offered evidence of the subsequent payment of these judgments thus affirmed with damages and costs. The Court overruled the plaintiff's objection to this, as evidence.

The plaintiff moved the Court to charge the jury—

1. That the deed was void on its face.

2. That it contained stipulations, promises and conditions inconsistent with the statute of frauds, and condemned by it, and was therefore null and void.

This was refused, and the jury instructed, that the deed was not in itself fraudulent, and contained no provision inconsistent with the statute of frauds, and unless fraud in fact was established by the proof, they ought to find for the claimant.

3. The plaintiff also requested the charge, that the last clause in the deed was fraudulent, and being so, the whole deed was void. The Court refused the charge as requested, but ruled that clause was void for repugnancy with previous provisions of the deed, but was not fraudulent so as to taint the whole transaction, and render it void.

4. There was proof that the trustee, on the 13th April, 1842, hired an overseer for the plantation, and delivered to him the field hands to manage and control, with instructions to consult Hopkins as to the cultivation and management of the plantation. On this the plaintiff requested the charge, that if the jury should believe that Hopkins remained in possession of the trust property, after the making of the deed, and used the provisions from the same for himself and family, before and during the year 1843, this was a badge of fraud. This the Court refused, and instructed the jury, that the possession of the property, before and during that year, by Hopkins, subject to the control of Lockhart, subsequent to the making of the deed, was not inconsistent therewith.

The plaintiff excepted to all these several charges, refusals to charge, and decisions of the Court, and now assign them as error.

A. GRAHAM and H. DAVIS, for the plaintiff in error, made the following points:

Graham v. Lockhart.

1. The claim bond should have been executed by Lockhart. [Clay's Dig. 211, §§ 52, 55 ; 213, §§ 62, 64 ; Minor's Rep. 406.] If the trustee improperly refused his aid, recourse could be had to a Court of Equity.   [2 S. & P. 356.]

2. The evidence admitted by the Court was improper, as parol evidence cannot be admitted of the contents of writings unless their loss is shown, or their absence accounted for.

3. The evidence proving the admissions of Lockhart should have been allowed, for it is certain he was not a competent witness.   [Green. on Ev. 347, 393-4.]   His liability for costs was sufficient to disqualify him.   [Ib. 401, 447, 455.]

4. The charges refused and those given, involve the principal question, which is, whether the deed, on its face, is fraudulent and void.   It is supposed to be so for many reasons.

1. Because partnership property is conveyed to pay individual debts.   [4 Paige, 35.]

2. The grantor reserves a possessory interest and benefit to himself.   [4 John. 464 ; 5 Ala. Rep. 297.]

3. Because of the stipulation that the property shall not be sold until the 1st of January, 1843, fifteen months after the execution of the deed.   [11 Wend. 203 ; 4 Ala. Rep. 380.]

4. The deed does not name all the creditors and beneficiaries.   [11 Wend. 203 ; 4 Ala. Rep. 380.]

5. The conveyance is conditional, and every thing belonging to the grantor is conveyed.   [Ib.]

6. The grantor indirectly, and by a secret trust, stipulates for a pecuniary advantage to himself.   [2 Kent's Comm. 535 ; 11 Wend. 201 ; 9 Porter, 571 ; 4 Ala. Rep. 379 ; 5 Paige, 374.]

7. Of this nature is the power of appointing creditors,   [14 John. 463; 11 Wend. 188 ; 7 Paige, 563 ; 4 Ala. Rep. 380 ; 5 Cowan, 566.]

8. The trustee is authorized to sell either all or *a part* of the property, to pay all or *a part* of the creditors, and the grantor retains the power to determine between two places of sale.   [9 Porter, 572.]

9. The deed is inoperative, inasmuch as it never has been executed by the parties of the third part, and their assent cannot be presumed, for it is not for their benefit to be delayed until the period stipulated for.

3

5. If the deed is void in part, as against the statute, it is void *in toto.* [1 S. & P. 156; 14 John. 466; 5 Cowan, 548; 4 Paige, 37.]

HOPKINS and T. P. CHILTON, contra, argued—

1. It is not material by whom the bond is executed; the object was security to the plaintiff in execution, and this is as well attained by other names. A bond by one, when there were more than one, has been held good. [Minor, 406.]

2. The claimant in the Court below, was properly attempting to show, that the debts mentioned in the deed were *bona fide,* and real. The evidence was offered, and admissible, for this purpose, and was not, as supposed by the plaintiff, giving evidence of writings, &c., without producing them. It was entirely unnecessary to produce the notes, &c., nor would any misdescription of the debts avoid the deed.

3. The question is not, whether Lockhart could have been sworn as a witness, but whether evidence of his admissions would be competent to defeat the deed. What he said or admitted, is not shown.

4. As to the question of fraud *per se*—

1. Many of the objections made to the deed do not affect this question; for, conceding the utmost weight to them, they would be considered only as badges of fraud, and consequently would be left to the jury to determine upon.

2. The deed must receive a reasonable construction; thus it cannot be supposed that a power is given to the trustee, to pay one part of the creditors named, and to omit to pay another. Its meaning is to pay all, or whatever part shall remain unsatisfied. So the provision for the sale, upon the day named, unless the debt was in some way paid by the grantor, is no reservation of an interest: it is what would be the law of the case, if no such clause was inserted, and therefore does not affect the validity of the deed.

3. Conceding that the deed does assign the grantor's interest in partnership property, it is neither fraud *per se,* nor a badge of fraud. It may be a fraud on the partner, for his co-partner to assign the effects of the partnership, to pay or secure his individual debts, but it does not affect the validity of a general deed that it may cover a partnership interest.

4. The judgment creditors existing at the execution of the deed, were properly paid, but if otherwise, that was a question for a specific charge, and did not affect the validity of the deed.

5. Indeed, the only questions which do go to this extent, are the reservation of the property from sale until the first January, 1843, and the appropriation of the $1,000, under the last clause of the deed. Now the first of these points is supposed to be covered by the decision of Ravisies v. Alston, 5 Ala. Rep. 297, 303.

6. The appropriation of the $1,000 out of the demands in the hands of Lea & Townes, to be paid as the grantor might direct, is not within the principle which governs the decision of Gazzam v. Poyntz, 4 Ala. Rep. 378, inasmuch as there can be no interference with either of the creditors named as preferred, nor with the property. It is nothing more than a reservation of $1,000 out of the deed, to be paid by Hopkins to other creditors than those named in the deed. If no appointment is made, the whole remains to the named creditors. It is not a power which could be used so as to benefit the grantor, for the money is gone from him under any circumstances.

GOLDTHWAITE, J.—1. The principal question here, which, somewhat out of its order, we shall consider first, is that arising out of the refusal of the Court to instruct the jury, that the deed of trust, in evidence, is fraudulent and void, on account of the reservations for the grantor's benefit, contained in it.

Since the cause was argued; two others, Elmes v. Sutherland and Pope v. Irvin, have been determined by us, in both of which the same general principles were involved, and in which we held, that deeds of trust, operative only as securities for the payment of money, were not fraudulent *per se*, on account of reservations of uses for the benefit of the grantor. [7 Ala. 262; id. 690.]

2. After a deliberate consideration of this deed, we are satisfied there is nothing on its face to warrant us in pronouncing it as intended to delay, hinder or defraud creditors, and that such cannot be the legal effect of it.

The intention is very apparent, we think, to appropriate the debtor's property to the payment of the specified debts, and for the indemnity of the persons who stand upon many of them as sureties for the grantor. It is questionable whether this deed,

either as to creditors or sureties, according to what is said in Elmes v. Sutherland, has any effect as a conveyance, without the assent of the creditors, or sureties, or some of them. If such an assent was given, then it operated as an agreement by the creditor, to postpone the payment of his debt until the law day of the deed, and its effect on the surety was to prevent him from resorting to a sale of the trust effects, for the same period. The reason why this deed does not at once operate as a conveyance in favor of the sureties, is, that it is not necessarily beneficial to them, inasmuch as there is no reason why they should assent to be responsible to the creditor out of their own estate, if the effects of the debtor is sufficient to pay all his debts. It cannot, at this day, be questioned, that a debtor has the right to appropriate the whole, or any part, of his estate to the indemnity of his sureties, and it is equally clear, that if the same stipulations as are found in this deed, were contained in a mortgage, no other debtor would have just cause of exception to it. Every mortgage, or deed of trust, intended as a security, necessarily contains a resulting trust for the debtor, and the stipulation so customary in conveyances of these kinds, that the debtor shall have the control and benefit of the estate, until the law day, is no more than he is entitled to, without any stipulation.

3. It is a very different matter, however, when it is asserted, that a debtor, under pretence of a mortgage, may continue his effects in trade, or in planting, for a definite or indefinite period. So far as the particular creditor is concerned, this is all a fair subject of stipulation and contract, but it cannot interfere to prevent any other creditor from his right to sell the resulting trust of the debtor in satisfaction of his execution.

4. So, too, it is a subject deserving great consideration, whether a debtor can, by a mortgage of his perishable personal estate, for the security of one creditor, prevent others from reducing that article to money, and thus determining the risk there must always be of its destruction, or depreciation in value; a risk which might fall upon all alike, as the mortgage creditor would have the same right as any other creditor, to look to the residuum of his debtor's estate, or to that afterwards acquired by him, in satisfaction of the debt, in the event of the depreciation or destruction of the mortgaged estate; and thus the unsecured creditors' fund might be lessened.

5. All these difficulties could be avoided by an immediate sale, and the powers of a Court of Equity are amply sufficient to prevent injury to the mortgage creditor, as well as to prevent injustice to the one who has no security.

6. Assuming that all the creditors and sureties indicated by the deed of trust, have assented to the proposed delay, in the payment of the debts named, it by no means follows that another creditor must wait the termination of this contract between these parties, if by a present sale of the property, any thing would remain for his satisfaction; nor is he bound by the stipulations between others, that perishable property may be consumed in the use of it. His right, is, to have all the debtor's estate reduced at once, to its money value, and if the secured creditors choose to become purchasers, and thus continue the relations between them and their debtor, a Court of Equity is competent to let them in to the extent of their debts, but all beyond, in common justice, ought to be fairly appropriated to such other creditors as pursue the common debtor with legal vigilance.

Under the views here expressed, it is obvious there can be no well grounded fear, that debtors will make these sorts of conveyances the means of delaying or defrauding other creditors, and the great evil is avoided of vitiating securities, which, in many, perhaps most cases, are honest and *bona fide.*

These conclusions necessarily dispose of all the charges requested to be given, as the deed, if free from fraud in fact, is valid in law.

7. The other points in the case will now be examined, in the order they are disclosed by the record. And first, of the motion to dismiss the claim, because the bond was not executed by the claimant, The condition of the bond, as now required by law, is for the forthcoming of the property, if found subject to the execution, and for the 'payment of such costs and damages as shall be recovered. [Clay's Digest, 213, § 62.] In practice, the claim is a distinct ;suit, in which the plaintiff in execution is the *actor*, and the claimant is the defendant; costs are rendered against either, according as the suit is determined, and damages are sometimes assessed against the claimant, when it appears that the claim is interposed for delay. It is obvious, therefore, so far as the cost and damages are concerned, that

the bond is merely an additional security, inasmuch as the claim-
ant is already liable for them by force of the judgment. But
the bond is also intended to secure an indemnity, if the proper-
ty, after condemnation, is not re-delivered to the sheriff. This
indemnity may be equally benefical to the plaintiff without, as
with, the claimant's name to the bond ; and as cases may occur
in which it will be onerous on the claimant thus to bind himself,
we consider the proper construction of the act, to be such as
will advance the remedy intended by it. The intention of the
act, was, to give those whose property is seized under execu-
tions against others, the right to contest the party's claim to
sell it, instead of a suit against the sheriff, or persons purchasing
it. In a great variety of cases, the person having the legal ti-
tle may be, as he is here, a mere trustee ; and there is no reason
why he, instead of those actually interested in the property,
should give the bond. At a very early day, it was held by this
Court, that one of several claimants might give the bond,
(Marrs v. Gantt, Minor, 406,) and it is only an extension of the
same view, to hold, that it may properly be entered into by any
one claiming to be beneficially interested in the property levi-
ed on.

8. It is not essential, to let in a deed as evidence, that the sub-
scribing witness should remember, with precision, its execution
by the parties. If this was the rule, the imperfections of the
witness's memory would avoid the deed. Here, however, he
stated that his signature, as a subscribing witness, was genuine,
and that it would not have been placed there, unless he had
been called to witness the instrument. This, in our opinion,
was sufficient to let in the deed to the jury, though it would ob-
viously be of little reliance, if the question at issue had been the
execution, or non-execution, of the deed.

9. The plaintiff having avowed his intention to attack the
deed for fraud, it was entirely proper for the claimant to offer
evidence of every matter which could raise a contrary in-
ference. Although we are not prepared to say, that any act
or omission of action, by the trustee, would vitiate the deed, yet
an inference of fraud might be drawn, if the *cestuis que trust*
had permitted the property to be used by the debtor as his
own. In this view, it was entirely proper to show the action
of the trustee, with reference to the trust property, and in ac-

cordance with the deed, to rebut any presumption which might arise from the acts of the debtor.

10. The questions arising out of the admissions of the evidence offered to sustain the consideration of the deed, or, in other words, the proof of the indebtedness described by it, are of some importance, and call for a more extended consideration. It is objected, that the description in the deed, is variant from the proof, and also, that the indebtedness could not be shown, without producing the notes, or accounting why they were not produced.

The necessity for proof to sustain the consideration of the deed, is shown by the decisions of Bradford v. Dawson, 2 Ala. Rep. 203, and Ravisies v. Alston, 5 Ala. Rep. 297; but in neither of these cases is it asserted that the proof must correspond precisely with the description in the deed. It is quite evident, that in drawing deeds of this description, the draftsman, and the grantor may be ignorant of the precise terms of the writing, evidencing the indebtedness intended to be secured; and it seems most unreasonable that a conveyance otherwise *bona fide,* should be avoided by a misdescription of the debt. There is a dearth, quite remarkable, of decided cases, bearing directly on this subject, and we have found but two in point. In Johns v. Church, 12 Pick. 557, one of the questions was, whether parol evidence was admissible to show, that a note for $256, produced at the trial, was the instrument described in a mortgage given to secure it, as for the sum of $236; and the evidence was held proper. In Commercial Bank v. Clapier, 3 Rawle, 335, the testimony of the grantor of a deed was allowed, to show, that a note different from that described in the deed, was the one intended to be secured, and that the one described never existed.

There is a marked distinction between letting in parol evidence to show a different consideration from that stated in the deed, when the contest is between the parties to it, and a stranger. The rule is universal, that a stranger may attack a deed by showing, either that it is without consideration, or is for a different one than stated, (2 Starkie's Ev. 556;) and though it is said that one who claims under a deed, will not be permitted to show a consideration, in support of it, different from that expressed, (2 Starkie's Ev. 556,) yet we think this expression must

be understood as referring to a difference in the quality of the consideration, and not that it must be shown to be precisely as stated. Thus, in Garret v. Stuart, 1 McCord, 514, it was held, that a greater or less consideration of the same character might be shown. And in Hinds v. Longworth, 11 Wheat. 199, a deed importing a voluntary conveyance from a father to a son, being assailed by a creditor, the party claiming under the deed, was allowed to shew the indebtedness of the father to the son, in an amount equal to the value of the property conveyed. See also, Jack v. Dougherty, 3 Watts, 151; Rex v. Scammander, 3 Term. 374; Williams v. Beaumont, Dyer, 146, a.; Duval v. Bibb, 4 H. & M. 113; Eppes v. Randolph, 2 Call, 103; Harvey v. Alexander, 1 Rand. 219; Bullard v. Briggs, 7 Pick. 533.

When the matter of consideration is collaterally presented, as it seems to be always, when a deed is to be supported by proof of a consideration, or defeated for the want of it, the question of letting in parol evidence, to explain or alter the written instrument does not arise. Lord Thurlow, in Coote v. Boyd, 2 Bro. C. 527, puts the matter on its proper ground, when he says, "*a question of presumption donec probetur in contrarium will let in all sorts of evidence.* When the presumption arises *from the construction of words, merely as words,* no evidence can be admitted. In this case, the question is not one of construction, but is of intention, and the deed is valid, or void, as there may be a consideration or the want of it shown. In this connection it is of little importance whether there is a mistake in the description of the debt, as the deed would be *bona fide,* if there was one substantially agreeing with the description, and if entirely misdescribed, there is no doubt of the power of Chancery to correct the mistake. In Brooks v. Maltbie, 4 S. & P. 96, and Mead v. Steger, 5 Porter, 498, the conclusions to which we have arrived, are stated as the result of the cases, though the questions then before the Court were not the same as they now are. See Stover v. Herrington, et al, 7 Ala. Rep. 142.

The decisions we have cited, lead directly to the conclusion, that so far as there may be a difference between the debts described as the consideration of the deed, and those shown in evidence, either as to the names of the sureties, debts or sums, this does not affect the validity of the deed, but at most furnishes grounds for presumptions, as the scale of evidence may incline.

We are satisfied this is the proper consideration to be given the subject and it seems the only one which will enable the true merits of a conveyance to be put before a jury, in a contest between a creditor and one claiming under the deed.

11. With regard to the objection, that the notes and other evidences of debt were not produced, or their absence accounted for, there is a different and sufficient answer. It is obvious, that neither the trustee, nor the debtor's sureties, have the control of the notes, &c. described in the deed. We do not know from the bill of exceptions, whether it was the sureties or the creditors, who availed themselves of the provisions of the deed, and if it is the former, as seems most probable, no suspicion arises that the originals were withheld from any improper motive. It is very questionable if the trustee or the sureties could compel the creditors to produce the notes held by them, to the used in this suit, (Bell v. Lorilard, 10 Pick. 9 ; Mills v. Oddy, 6 C. & P. 728 ; Scheleneker v. Maxey, 3 B. & C. 789;) though it is said this is rather the privilege of the witness than of the party. [Mills v. Oddy, supra.] But, however this may be, we think, on other and more general grounds, there was no necessity to produce the notes. The general rule is, that when the writing is the exclusive medium of proof, it must be produced or its absence accounted for. [See cases collected in Cowan & Hill's Notes, 1208.] Here the fact to be proved, is the indebtedness of the grantor, or that the sureties named stood in that relation to him, and both these may as well be proved orally, as by the production of the writing. Indeed, it will admit of question, whether the production of the notes, without further proof, would be sufficient to establish either fact, on account of the facility with which such evidence might be fabricated. In Lamb v. Maberly, 3 Monroe, ; the action was for the price of a note, sold by the plaintiff to the defendant, and it was held, evidence might be given of the sale, without producing the note. In Spears v. Wilson, 4 Cranch, 398, evidence was given of a deed of slaves, without producing it, to show the nature of the possession which accompanied it. These cases seem to recognize the rule just stated, and as there is nothing to authorize the inference, that the notes themselves could be procured, or were within the control of the party offering the evidence, we think the objection cannot be sustained.

4

12. The next question is that which relates to the exclusion of evidence of the admissions of the trustee, with respect to the deed. What those admissions were, we are not informed, but the inference is, they were offered to defeat the deed, and in this view, we think the evidence inadmissible.

The English Courts seem generally to maintain, that the admission of the plaintiff on the record is always evidence, though he be but the trustee for another. [Craib v. D'Aeth, 7 Term, 670, in note; Bauerman v. Radenius, ib. 663.] In the latter case, Mr. Justice Lawrence said he had looked into the books, and could find no case in which it had been held, that an admission by the plaintiff on record was not evidence. To permit a mere nominal party to defeat a suit by his admission, and yet refuse the same effect to his release of the action, seems to involve a contradiction of principle. However this is, it is certain the English Courts have held the latter doctrine. In Payne v. Rogers, 1 Doug. 407, where the defendant had procured a release from the nominal plaintiff, the Court ordered it to be delivered up, and permitted the real plaintiff to proceed with the action. And a nominal plaintiff in ejectment, has been committed for a contempt, upon releasing an action. [1 Salk. 260.] On the other hand, it is said, in Buller's Nisi Prius, 233, that the answer of a trustee can, in no case be received against the *cestui que trust*, and it has also been held, that the admissions of neither guardian, or *prochein ami*, can be received against an infant. [Cowling v. Ely, 2 Stark. Ca. 366; Webb v. Smith, 1 R. & M. 106; to the same effect is Isaacs v. Boyd, 5 Porter, 388.] In many of the Courts of this country, a rule different from that usually recognized in England, has obtained very generally; and the party having the beneficial interest in a chose in action, is not affected by the admissions, or release, of the nominal plaintiff. [See cases collected in Cowan & Hill's Notes, 163; Chitty on Bills, 9, note 1.] In conformity with the general current of decision, we held, in Chisolm v. Newton, 1 Ala. Rep. N. S. 371, that the admission of the nominal plaintiff, made after the commencement of the suit, could not be given in evidence to defeat the action. And in Duffee v. Pennington, ib. 506, as well as Prewit v. Marsh, 1 S. & P. 17, it was considered the nominal plaintiff might be called as a witness by the defendant and sworn, if he made no objection.

It is true that most of the American cases are upon assigned choses in action, but the principle on which they proceed is, that one having no interest in the suit, ought not to be permitted to defeat or affect it, by his admissions; this seems equally applicable to a trustee, who is invested with the legal title to a specific chattel, solely for the benefit of others. Whether the claimant, under the circumstances of the case, might have been called as a witness, it is not necessary to determine, but we may be permitted to remark, that independent of his relation to the cause, as a party upon the record, there seems no objection on the score of interest. [12 East, 250; Duffee v. Pennington, 1 Alabama Reports, N. S. 506; Mann v. Ward, 2 Atk. 229; Hall v. Tyrrel, Bard. K. B. 12; Goss v. Tracey, 1 P. Wms. 290; Craft v. Pyke, 3 ib. 181; Philips v. D. of Bucks, 1 Vern. 230; 1 P. Wms. 595; Ballew v. Russell, 1 B. & B. 99.]

13. The deed authorizes the trustee to apply the proceeds of the crop of the year, when it was made, to the payment of the then subsisting judgments against the grantor. The circumsance, that these were afterwards superseded by writs of error sued out by him, and subsequently paid by the trustee, was proper evidence to rebut any presumption of fraud arising out of the omission to show what had been done with the property.

From what we have said, it will be seen that we consider the case as free from error, in all the points presented.

Judgment affirmed.