[PHILADELPHIA, FEBRUARY 2, 1832.]

## The Commercial BANK of Pennsylvania *against* CLAPIER and another, Assignees of Hunt.

Where, in a voluntary assignment for the benefit of creditors, provision was made for the payment of a note particularly described therein, the court permitted the assignor to be examined to prove, that at the time of the execution of the assignment, there was not in existence such a note as that described, but that there was a note answering the description in every particular, except that instead of being drawn by the assignor in favour of *A.* as stated in the assignment, it was drawn by *A.* in favour of the assignor, and discounted by the present holder for his accommodation, and that he intended to provide for the payment of that debt.

THIS action, which was tried before Judge ROGERS at Nisi Prius on the 24th of *November,* 1827, was brought by the plaintiffs, who were the holders of a promissory note drawn by *Arthur St. Clair Nichols* in favour of *Wilson Hunt,* dated *February* 27th 1826, payable six months after date, for two thousand four hundred and seventy-six dollars and eight cents, and endorsed by *Hunt,* against the defendants, who were the assignees of the said *Wilson Hunt* in a voluntary assignment, dated *August* 4th 1826, to recover the amount of the said note, which they alleged, was provided for in the assignment as a preferred debt.

The assignment among other things provided, that the assignees should pay " two notes drawn by the said *Wilson Hunt* in favour of *Arthur St. Clair Nichols,* dated *February* 27th 1826, at six months,

(Commercial Bank *v.* Clapier and another.)

one of them for two thousand four hundred and seventy-six dollars, and eight cents, and the other of them for nine hundred and seventy-four dollars, and sixty-two cents.

After having given the assignment in evidence, the plaintiffs offer-ed to examine *Hunt* as a witness to prove, that at the time of the execution of that instrument, the plaintiffs held the note to recover the amount of which the present suit was brought; that it was dis-counted by the plaintiffs for *Hunt's* accommodation; that he intend-ed in making the assignment to provide for its payment, and that in fact there were not in existence any such notes as the two described in the assignment.

It was admitted, that the creditors of *Hunt,* who were not preferred, had generally executed a release, agreeably to the stipulations con-tained in the assignment, in order to entitle themselves to an interest in the estate assigned.

The defendants' counsel objected to the competency of the wit-ness, but the court overruled the objection, and he was examined. His evidence was as follows:—" This is my indorsement (on the note held by the plaintiffs,) I borrowed this note of *A. St. Clair Nichols* or *Edward W. Robinson* did for my use. There was not at the time of my assignment any note in existence drawn by me in favour of *Nichols.* Some time after I got this note, and the one for nine hundred and seventy-four dollars, and sixty-two cents, *Nichols* called and asked me for two notes, or one for the amount of the two, which I gave him, and which he afterwards returned and I destroyed. He had it in his hands four or five days. When I prepared my assign-ment, I intended to prefer all debts where there was no reciprocity; and I considered this as one of that class. I am doubtful, cannot say, what was my impression at the time as to the existence of any note other than this. I can only say, that I intended to secure the debt as there was no reciprocity. I was astonished that I had made the mistake. I knew at all times, who was the drawer and who the indorser. I do not recollect at any time having an impression that there was another note.

" I have no recollection as to what was my impression at the time of my assignment as to the existence of a counter note. I intended to prefer this debt. On the 5th day of *August,* Mr. *Robinson,* one of the assignees, called on me and mentioned, I had made a mistake, that I had not preferred *Nichols,* that I had said my two notes to *Nichols,* and he had not mine, but I had his. I was surprised I had made the mistake and doubted, and requested him to go and examine the assignment. Meantime I called and examined a copy at Mr. *Lowber's* Office, and discovered that Mr. *Robinson's* representation was correct. Before he went to the Recorder's Office to examine, I told him, if it was possible I had made the mistake I would give him two notes to correspond. Finding I had made the mistake, I drew two notes myself; *Robinson* called the same day, and I gave him the two corresponding notes, and requested him to give them to *Nichols,*

(Commercial Bank *v.* Clapier and others.)

observing they would enable him to claim the benefit of my assignment. I have reason to believe, that the Farmer's and Mechanic's Bank, and *Mahon* and *Taggart* hold the other two notes."

The jury found a verdict for two thousand six hundred and sixty-seven dollars, and twenty-seven cents, subject to the opinion of the court as to the competency of the witness and the effect of his evidence.

*J. R. Ingersoll* and *J. Sergeant,* for the plaintiffs. This case has a close analogy to that of *Heilner* v. *Imbrie,* 6 *Serg. & Rawle,* 401, in which the court, construing the assignment, *ex visceribus suis,* decided that the preference was given to the debt, and not to the person named in the instrument as the representative of the debt. Where, taking the whole instrument together, it is apparent that a certain thing was intended, the court will, if possible, give it effect, and will carry into operation the general intention, even if, to effect that object, the particular intention must be sacrificed. An assignment is more in the nature of a last will than a contract, and is entitled to even a more indulgent construction than a will in order to effectuate the intention. A will is not always made under the apprehension of dissolution, when the mind is incapable of applying itself with vigour to the subject before it, but an assignment is always made in the agony of insolvency, and should therefore receive a liberal interpretation. There was a trust to provide for a debt of a certain amount, which was to be satisfied before others of a different description. The assignees accepted the trust to execute it according to the intention of the assignor. It is apparent that the intention was to provide for a privileged debt, which the assignor considered himself bound in honor to provide for, and if it is not paid, his funds will be applied to the payment of debts, for which he made no particular provision, while that for which he intended specially to provide, will remain unpaid. The intention to provide for this debt may be inferred from the instrument itself, without resorting to parol evidence. It is sufficiently identified to leave no doubt on the subject. In date, amount, term of credit, in every thing except the mere position of the parties, the note in question corresponded with that mentioned in the assignment, and even in the particular, in which they apparently differ, they substantially correspond. Formerly when a man borrowed the name of another, the note was drawn by the borrower, and in order to have the money passed to his credit in bank, "credit the drawer," was written below, and signed by the payee. On the establishment of the *Bank of the United States,* they refused to receive notes of this description, in consequence of which a usage was introduced of drawing accommodation notes in favour of the borrower, by which the endorser became the principal, and the drawer the security. In effect, therefore, the note described is exactly the same as that, on which the plaintiffs now claim.

But, if any doubt could exist, it is removed by the parol evidence, which was clearly competent. Parol testimony is excluded in giving

an interpretation to a written instrument, because it tends to introduce uncertainty. Where it leads to the door of truth, it is free from exception. The object in resorting to it on the present occasion, was to establish the truth, and render certain what otherwise might be deemed uncertain. It was to prove, that there were no such notes in existence as those described in the assignment, and consequently, as the parties must have meant something, that the note held by the plaintiffs, the only one to which the assignment could apply, must have been intended to be provided for. A latent ambiguity may always be explained. Wherever a devise or a trust would fail, without a resort to extrinsic evidence, it is invariably admitted. In *Heilner* v. *Imbrie*, parol evidence was rejected, because it tended to vary the deed, and because it would have affected the rights of third persons, which had become vested under it, by matter of which they had no notice: in the present instance no such consequences were to be produced by it. No right was acquired under an ignorance of the actual state of things. The assignment gave notice of a note exactly corresponding with the one in question, except in a single immaterial particular, and any one, who chose to enquire, might have become acquainted with the exact nature of the transaction. It is impossible that any one could be injured by letting in the evidence, the object of which was merely to give effect to the plain intent of the assignor. *Bank of Montgomery County* v. *Walker*, 9 *Serg. & Rawle*, 229. *Anderson* v. *Neff*, 11 *Serg. & Rawle*, 208. *Watson* v. *Blaine*, 12 *Serg. & Rawle*, 136. *Knyaston* v. *Nicholas*, 12 *Eng. Com. Law Rep.* 54. *Doe ex dem Chichester* v. *Nicholas*, 3 *Taunt.* 156. 2 *Car. & Payne*, 120.

*Binney*, for the defendants. To say, that parol evidence may be admitted wherever a deed would be inoperative without it, would be to introduce a most dangerous principle, to sustain which no authority can be found. Its admissibility may be classed under three general heads. 1st. Where the alleged mistake is contrary to the instructions given for drawing the instrument, in which case chancery will reform it. 2. In the case of a latent ambiguity, where on the face of the deed there is no difficulty, but it arises from extrinsic facts, and parol evidence is necessary to explain it. 3. Where it is clear, the party intended to describe a different thing from that, which he did describe. This case, it cannot be pretended, comes within the first class, as there is nothing to show any departure from instructions, or that the assignor is made by the deed to say any thing he did not intend to say. Mistake in the effect of an instrument is no ground to reform it. Nor is there any latent ambiguity. In every such case the parol evidence is consistent with the language of the instrument; as where there is a devise to testator's grandson *Samuel*, and there are two of that name, parol evidence is admissible to show which is meant. *Jackson* v. *Sill*, 11 *John. Rep.* 215. *Grant* v. *Naylor*, 4 *Cranch*, 235.

(Commercial Bank *v.* Clapier and others.)

A misdescription may sometimes be rectified by extraneous evidence. If a man devise his house in *A.* when he has no house there, but has one in *B.*, in other respects answering the description, this may be shown by parol evidence, and it will pass. But the present is not a case of misdescription. *Hunt* had given a note corresponding with that described in the deed, and when that instrument was prepared, he did not advert to the fact, that he had destroyed the original note, and given the one now in question. He no doubt supposed, that in giving the preference in the manner he did, he secured the debt, for which *Nichols* was responsible. But in this he was mistaken, and his mistake cannot now be put right. The distinction is this. If he intended to describe the note drawn by *Nichols* for his accommodation, and by mistake described the other note, it is a case of misdescription, which admits of a remedy by parol evidence. But if, as was really the case, he intended to describe what he did describe, but was mistaken as to the effect of the instrument, it is a case not of misdescription, but of erroneous intention, which does not admit of such a remedy. What he says was his intention, can under such circumstances have no weight. To admit such evidence would be to rest every thing in the breast of the assignor, and permit him to make a new deed at his own pleasure. *Ulrick* y. *Litchfield*, 2 *Atk.* 372. 4 *Dess. Eq. Rep.* 209. 215. *Cas. Temp. Talb.* 239. *Goodinge* v. *Goodinge*, 1 *Ves.* 231. 1 *Mass. Rep.* 91. *Piersons* y. *Hooker*, 3 *John. Rep.* 70. 1 *Phil. Ev.* 511. 2 *John. Ch. Rep.* 585. 631. 1 *Mad. Ch.* 49. 50. 1 *Bro. Ch. Ca.* 350.

The opinion of the court was delivered by

GIBSON, C. J.—It seems clear on one of the grounds assumed in the argument, though not on all, that the evidence was not only competent, but such as to entitle the plaintiff to a verdict. As the object was, among other things, to secure what is in substance the very debt, though erroneously described in the assignment, it has been insisted that the evidence was proper to explain, without changing the legal effect of the instrument, a matter that appeared unambiguous on the face of it. Necessity, however, not accident, is the foundation of parol evidence to explain a latent ambiguity, such evidence being indispensible to distinguish a person or thing called by the right name, from another person or thing bearing the same name, or to ascertain a person or thing purposely miscalled. I had once the pleasure to know an eccentric gentleman, who gave a legacy to a young lady by the appellation of *Hyder Ally*, a name by which he had been accustomed to distinguish her in childhood; yet no one supposed, that she was thus designated in his will by accident. In the case at bar, there certainly was no intention to describe the note otherwise than as it was supposed to exist; and that it was not truly described, is attributable to misapprehension. The instrument, then, being free from intentional ambiguity, would at law be left to its technical meaning. On the proofs in the cause, however, it would

(Commercial Bank *v.* Clapier and others.)

undoubtedly be reformed in equity. Against the competency of the evidence on that ground, it has been argued, that as no fact has been disclosed to reform by, proof of an intention different from what appears on the face of the instrument, is not to be received. That, however, is not to be conceded. The evidence on which an instrument will be rectified for a plain mistake of fact, is either intrinsic, as arising from a recital ; or extrinsic, as arising from another instrument, on which it is founded, or from independent documents, such as letters, instructions to the scrivener, or a counterpart ; or from parol proof, with this qualification that it be so clear as to satisfy a chancellor beyond a doubt of the concurrent intention of the parties. Here it satisfactorily appears, that shortly after Mr. *Hunt* had obtained the note indorsed by him to the plaintiff, but described in the assignment as drawn by him, Mr. *Nichols,* the actual drawer, called on him, and obtained a counter note, which, however, in the course of a few days was delivered up to be cancelled ; and though Mr. *Hunt* does not remember his particular impression in regard to its existence at the time of the assignment, he distinctly testifies that he meant to prefer this particular debt, and that he was afterwards astonished to find, he had described it in terms, which excluded it from the trust. Undoubtedly this is enough to entitle the plaintiff to relief. But it is further objected, that as Mr. *Hunt* described the debt exactly in the terms he intended, the mistake was in a collateral matter, and not in the composition of the instrument. It must be conceded that a mistake about a circumstance, which had no other connexion with the matter in hand than as constituting the inducement of the party to enter into the contract, is no ground for relief. But on the other hand, it is not essential that intending to write down one thing, he should have written down another. Such blunders are seldom made ; applications for the correction of errors would be rare indeed, if nothing else were an available title to equitable interference. It is sufficient that the fact mistaken was an immediate part of the transaction ; and as it was so here, there is nothing to show that the plaintiff ought not to recover.

Judgment accordingly.