**Clifton PETERS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 92–479 C.

United States Court of Federal Claims.

April 27, 1993.

James E. Lobsenz, Seattle, WA, for plaintiff.

Geoffrey C. Cook, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen and Thomas W. Petersen, Washington, DC, for defendant; Lieutenant Colonel Conrad M. Von Wald, U.S. Air Force, of counsel.

## OPINION AND ORDER

TURNER, Judge.

Plaintiff, a former technical sergeant in the United States Air Force, was involuntarily separated from military service in 1987 for exceeding weight standards. Plaintiff brought this action alleging that his discharge was wrongful and seeking reinstatement, back pay and other relief. On October 19, 1992, defendant filed a motion to dismiss or, in the alternative, for summary judgment. On February 1, 1993, plaintiff filed a cross-motion for summary judgment. We conclude that defendant's motion for summary judgment should be granted and that plaintiff's cross-motion must be denied.

## I

On July 10, 1969, after deciding to enlist in the United States Air Force, plaintiff reported for his pre-induction physical examination at which he was deemed unfit for military service because he was overweight. After learning of this defect, plaintiff's recruiter submitted on plaintiff's behalf a request for a temporary physical waiver of medical qualifications under the Medical Remedial Enlistment Program.[1] The Air Force approved this request, and on August 12, 1969, plaintiff enlisted in the Air Force. Plaintiff reenlisted in 1972, 1976 and 1982, for terms of four, six and six years, respectively.

There is no indication in the administrative record that plaintiff was subject to administrative action for exceeding weight standards before 1976.[2]

On August 20, 1976, plaintiff's commander notified plaintiff that his weight of 291 pounds exceeded the maximum allowable weight for men of his age and height as specified in Air Force Regulation (AFR) 50–49, which was in effect at the time.[3] R. 335.[4] The notice directed plaintiff to report

---

1. Plaintiff entered the Air Force under the Medical Remedial Enlistment Program, or Project 100,000. Under this program, the military allowed persons with certain remediable defects to enlist with the understanding that they would be required to meet the standards of the military eventually.

2. On March 29, 1993, plaintiff filed a motion to permit discovery and to supplement the administrative record. Plaintiff contends that through additional discovery he can show that the Air Force knew that he was overweight before 1976. Because that fact, if proven, would not affect the outcome in this case, and hence is not material, we deny plaintiff's motion for discovery and supplementation of the record.

3. At that time, plaintiff's recorded maximum allowable weight was 226 pounds. R. 361. The Air Force changed plaintiff's maximum allowable weight three times over the course of his military career. R. 361. The first adjustment, increasing his maximum allowable weight to 242 pounds, was made on January 22, 1979, R. 361; the second adjustment, increasing his maximum allowable weight to 251 pounds, was made on October 7, 1980, R. 361; the last adjustment was made after the Air Force discovered a permanent weight waiver which set plaintiff's maximum allowable weight at 260 pounds, R. 361, 471.

4. For ease of reference, we refer to pages in volumes I–IV of the administrative record as "R. _." We refer to pages in volume V of the administrative record as "Vol. V, R. _."

to the base medical services for an evaluation of his condition and informed plaintiff that if the physician confirmed his overweight condition, then he would be required to reduce his weight at the rate of at least three pounds each thirty days and that failure to maintain satisfactory progress would result in administrative action as outlined in AFR 50–49.[5] Plaintiff's medical evaluation revealed that his obesity was caused by overeating. Accordingly, plaintiff's commander entered plaintiff in the weight management program effective September 7, 1976. R. 455.

Between September 1976 and April 1977, plaintiff lost 42 pounds. R. 350, 352–56, 359. (On April 12, 1977, plaintiff weighed 249 pounds.) Monthly progress reports from this period show that his progress was labelled "satisfactory" in each month. *Id.* Plaintiff's progress chart shows that his weight remained fairly constant between April and August of 1977. R. 494. During this time, plaintiff's commander verbally counseled plaintiff several times. R. 400–01. Although his weight loss was satisfactory cumulatively (in other words, he had reduced his weight by an *average* of

six pounds per sixty-day period over the length of his participation in the program), he did not lose any additional weight during this period.[6] Plaintiff's commander repeatedly instructed plaintiff that he would take stronger administrative action if plaintiff failed to lose the required weight. There are no records showing plaintiff's weight or progress in the program for the period between August 1977 through April 1978; apparently plaintiff was on leave for some of that time. R. 294, 399.

On May 5, 1978, plaintiff weighed 280 pounds. R. 294. Progress reports for the succeeding months show that his progress was "satisfactory." R. 348–49, 351. By April 1979, plaintiff reduced his weight below his maximum allowable weight, R. 295, 307, and he graduated from the program for the first time.[7] R. 361.

On September 26, 1979, plaintiff's commander notified plaintiff that he was being reentered in the weight management program because his weight on a follow-up period weigh-in was 253 pounds, 11 pounds above his maximum allowable weight.[8] R. 427. In December 1979, plaintiff's com-

---

**5.** AFR 50–49 was in effect when plaintiff entered the weight management program in 1976. Section D of that regulation, entitled "Weight Control," provided that "[i]ndividuals exceeding the maximum weight for their age and height, will be entered into a mandatory weight reduction program," that individuals in the program "will be allowed 60 days from the date of notification to demonstrate ability to control his or her weight," and that "[w]hen an individual fails to control his or her weight within the 60–day period, commanders will initiate appropriate administrative action." AFR 50–49, section D, ¶ 15.a. Among the administrative actions available for enforcing the weight regulations was administrative separation. AFR 50–49, section D, ¶ 18.d. The regulation did provide an exception for individuals "clearly demonstrat[ing] the ability to control [their] weight through satisfactory weight loss" even if those individuals exceeded the maximum allowable weight after the initial 60–day period. AFR 50–49, section D, ¶ 15.a. Although the regulation, as promulgated in 1972, allowed a "responsible medical official" to determine whether an individual's weight loss was "satisfactory," *id.*, the regulation was amended in March 1977 to define a "satisfactory" weight loss as a loss "of at least six pounds per observation period," Interim Message Change 77–1 to AFR 50–49, ¶ 2.a.

In September 1977, AFR 50–49 was replaced by AFR 35–11. The relevant portions of the new regulation were substantially the same as the superseded regulation. In May 1978, AFR 35–11 was amended to provide that an *average* weight loss of six pounds per 60–day period was satisfactory. Interim Message Change 78–1 to AFR 35–11, ¶ 1.h. AFR 35–11 was amended again in July 1981 and in April 1985. The provisions relating to administrative actions that were in effect in August 1985, when plaintiff's commander recommended separation, permitted and recommended separation following a fourth unsatisfactory 60–day period. AFR 35–11, ¶ 2–28–e(4)(b).

**6.** Although the weight regulations did not expressly define a "satisfactory" weight loss as an average loss of six pounds per sixty-day period until May 1978, it was apparently an informal policy of the Air Force before that time that such a loss would be satisfactory.

**7.** At this time, plaintiff's recorded maximum allowable weight was 242 pounds.

**8.** After successfully completing the weight management program (i.e., reducing one's weight below the maximum allowable weight), a participant enters the follow-up period and his weight is monitored for an additional ninety days.

mander placed plaintiff in a mandatory physical conditioning program due to his failure to lose weight. R. 429. On December 12, 1979, plaintiff's commander sent plaintiff a letter of counseling that notified him of the weight control provisions in AFR 35–11 and specifically of the possible administrative actions that could be taken against him. R. 392. On December 17, 1979, plaintiff's commander placed plaintiff on the control roster which meant that he was under special observation for a period of 120 days. Plaintiff's commander advised plaintiff "that this special observation will not preclude administrative demotion or separation action if such action is considered appropriate whether or not there is evidence of additional substandard duty performance or misconduct." R. 391. On April 1, 1980, plaintiff's commander issued a written reprimand to plaintiff because he failed to lose six pounds during the preceding sixty-day observation period. R. 430. The reprimand warned that "[s]uch conduct raises questions as to your fitness to retain your present grade. Any future misconduct could lead to more serious action being taken." R. 430. By April 9, 1980, plaintiff reduced his weight to 240 pounds, R. 280, and graduated from the weight management program for a second time, R. 361.

In September 1980, plaintiff weighed 293 pounds and entered the weight control program for a third time. R. 282, 488. Plaintiff reduced his weight at the rate of three pounds per month, on average, between September 1980 and July 1981, when he weighed 262 pounds. R. 282. Although he gained most of this weight back and weighed 285 pounds on October 19, 1981, R. 282, the Air Force changed his maximum allowable weight to 260 pounds on October 19, 1981, because of a permanent weight waiver found in his medical records. R. 418. As of February 1982, plaintiff weighed 271 pounds. R. 266.

For the rest of his military career, plaintiff never again succeeded in reducing his weight below his maximum allowable weight of 260 pounds.[9] At times his progress was satisfactory (*i.e.*, he lost an average of six pounds per sixty-day period), R. 289, 301, and at other times his progress was unsatisfactory, R. 283, 323.

As a result of unsatisfactory periods, plaintiff received numerous administrative sanctions. In June 1982, plaintiff was verbally counseled. R. 281, 361. In October 1982, plaintiff received a verbal reprimand. R. 281, 361. In March 1983, plaintiff received a written reprimand. R. 281, 361, 388. In February 1984, plaintiff received an Article 15 nonjudicial punishment for cheating on the scales. R. 312–13, 385.

9. The following chart shows fluctuations in plaintiff's recorded weights during the period June 1982 through March 1986.

| Date | Weight |
| --- | --- |
| June 1982 | 278 |
| August | 272 |
| October | 292 |
| December | 278 |
| February 1983 | 325 |
| March | 325 |
| April | 312 |
| May | 308 |
| June | 299 |
| July | 290 |
| August | 282 |
| September | 280 |
| October | 280 |
| November | 275 |
| January 1984 | 270 |
| February | 333* |
| March | 338 |
| April | 331 |
| May | 329½ |
| June | 327½ |
| July | 326 |
| August | 316 |
| September | 312 |
| October | 320 |
| December | 300 |
| February 1985 | 295 |
| April | 310 |
| May | 305 |
| June | 299½ |
| July | 307 |
| August | 310 |
| September | 306½ |
| October | 319½ |
| November | 331 |
| December | 323 |
| January 1986 | 319¼ |
| February | 312½ |
| March | 311½ |

R. 267–68, 270–71, 277, 281.
* The large fluctuation between January and February of 1984 is probably due to the fact that in February the Air Force discovered that plaintiff had been cheating on the scales.

He also was placed on the control roster. R. 361. In June 1984, plaintiff was verbally counseled, R. 268, and plaintiff's commander recommended plaintiff for a rank reduction. R. 268, 361. In May 1985, plaintiff's commander again recommended plaintiff for a rank reduction. R. 268, 362, 364–65. In June 1985, plaintiff's commander did not recommend plaintiff for a promotion because of his weight problem. R. 268, 316. In the course of receiving progressively harsher administrative sanctions, plaintiff was frequently warned that he would be subject to even further disciplinary action.[10]

In August 1985, plaintiff's commander recommended that plaintiff be discharged under AFR 35–11 for unsatisfactory duty performance and, more particularly, for exceeding weight standards. R. 37–39. On November 1, 1985, the Air Force Administrative Discharge Board conducted a hearing to determine whether plaintiff should be discharged. The discharge board found that plaintiff's performance was unsatisfactory "as evidenced by repeated failure to lose the prescribed amount of weight in accordance with AFR 35–11" and concluded that plaintiff was "subject to discharge" and that plaintiff was "eligible for probation and rehabilitation." Vol. V, R. 71. In February 1986, the Air Force approved the discharge but suspended it contingent upon plaintiff's satisfactory progress in meeting the requirements under the weight management program during a probationary period. Vol. V, R. 71. Plaintiff failed to make satisfactory progress, and on March 20, 1987, plaintiff was honorably discharged in the grade of technical sergeant for unsatisfactory duty performance.

On March 18, 1987, two days before his discharge was to become effective, plaintiff filed an action in the United States District Court for the District of New Hampshire, seeking an injunction preventing the Air Force from discharging him. That action was dismissed by the district court for failure to exhaust administrative remedies.

Subsequently, in January 1989, plaintiff filed an application with the Air Force Board for Correction of Military Records, seeking reinstatement, back pay and reimbursement of medical expenses. The correction board denied plaintiff's application in 1990, concluding that "the evidence presented did not demonstrate the existence of probable material error or injustice." Vol. V, R. 8.

Then, in April 1992, plaintiff brought an action in the United States District Court for the Western District of Washington. On June 19, 1992, the district court transferred that action to this court, and on July 31, 1992, plaintiff filed a complaint in this court alleging that the decision of the correction board, denying his application for reinstatement, was arbitrary, capricious, unsupported by substantial evidence or unlawful. Specifically, plaintiff alleges that the correction board's decision should be vacated because (1) the Air Force was equitably estopped from discharging plaintiff, (2) the Air Force violated the due process clause of the Fifth Amendment in discharging plaintiff and (3) the board improperly failed to consider the effect of evidence that the weight regulations were not applied consistently with respect to all members. The prayer for relief seeks back pay, reinstatement and a declaratory judgment as to plaintiff's rights.

Defendant filed a motion to dismiss or, in the alternative, for summary judgment. According to defendant, the complaint should be dismissed for lack of jurisdiction because plaintiff does not allege a valid basis for this court's jurisdiction, or, if the court determines that the complaint was sufficient to invoke Tucker Act jurisdiction, then the declaratory judgment claim should be dismissed because the Tucker Act does not vest jurisdiction in this court over that type of claim. Defendant further contends that the complaint should be dismissed for failure to state a claim upon which relief can be granted because the decision to discharge plaintiff presents a nonjusticiable

---

**10.** For instance, in March 1983, plaintiff was notified that "[c]ontinued failure to progress under the program may result in further disciplinary action and even separation from the United States Air Force." R. 388.

question. Finally, defendant contends that it is entitled to judgment as a matter of law because the discharge decision was not arbitrary, capricious, unsupported by substantial evidence or unlawful.

## II

■ Plaintiff's claims for reinstatement in the Air Force and for back pay for the period of his allegedly unlawful separation are within this court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a).[11] *See Sargisson v. United States,* 913 F.2d 918, 920 (Fed.Cir.1990). Defendant objects to plaintiff's failure to expressly invoke jurisdiction under the Tucker Act in his complaint. Although a pleading should contain "a short and plain statement of the grounds upon which the court's jurisdiction depends," *see* RCFC 8(a)(1), the failure to do so is not a jurisdictional defect. Accordingly, defendant's motion to dismiss the claims for reinstatement and back pay for lack of jurisdiction should be denied.

Plaintiff also requests a declaration that "the Air Force may not discharge or refuse to enlist plaintiff in the future on grounds of being overweight." Complaint ¶ 47. Defendant asserts that this court lacks jurisdiction to grant declaratory relief. In response, plaintiff requests a transfer to the United States District Court for the Western District of Washington under 28 U.S.C. § 1631, which expressly provides for transfer when there is a "want of jurisdiction."

Plaintiff's claim rests on the premise that this court's decision on the principal claim would have restored plaintiff to the military. Because we conclude that the correction board's decision should be upheld, the premise for the declaratory judgment claim no longer can be satisfied.[12] Accordingly, that claim is moot. For the same reason,

we have no occasion to transfer that claim to the district court.

In sum, we conclude that defendant's motion to dismiss the reinstatement and back pay claims for lack of jurisdiction should be denied and that plaintiff's claim for declaratory relief should be dismissed as moot.

## III

■ It is well-settled that determinations made by the boards for correction of military records are reviewable. A discharge decision made by a correction board may be vacated if it is arbitrary, capricious, unlawful or unsupported by substantial evidence. *Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983); *Sanders v. United States,* 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979).

■ Nonetheless, defendant contends that the entire case should be dismissed because it involves issues that are within the discretion of the military. Defendant points out that civilian courts should be reluctant to interfere in military disciplinary decisions. *See Chappell,* 462 U.S. at 300, 103 S.Ct. at 2365. Therefore, defendant argues that any judicial review in this case would involve an unjustified intrusion into internal military personnel decisions.

It is true that certain military decisions are outside the scope of judicial review. *See, e.g., Sargisson v. United States,* 913 F.2d 918, 922 (Fed.Cir.1990) (holding that the decision by a correction board that one officer effectiveness report would not have altered a reserve officer's prospects for retention on active duty was not reviewable because there were no tests or standards by which a court could evaluate the decision); *Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.) (holding that the decision by

---

**11.** Section 1491(a)(2) of title 28, United States Code, provides, in pertinent part:

> *To provide an entire remedy and to complete the relief afforded by the judgment,* the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders

may be issued to any appropriate official of the United States.

(Emphasis added).

**12.** Although this court generally lacks jurisdiction to grant declaratory and injunctive relief, we note that 28 U.S.C. § 1491(a)(2), may provide an appropriate basis for the type of declaratory relief sought here. *See* note 11, *supra.*

the Navy to deny additional special pay was nonjusticiable because "[c]ourts do not have the institutional competence to make the substantive determination that a particular medical officer is deserving of additional compensation"), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988).[13]

Although we agree and plaintiff concedes that the Air Force has considerable discretion to set its own weight standards, plaintiff's claims are reviewable because they do not require the court to substitute its judgment for that of the military in matters involving fitness to serve. Instead—as the discussion below demonstrates—they may be rejected by application of well defined tests and standards, principally, consideration of whether principles of estoppel bar the military from applying its weight regulations to plaintiff. Accordingly, defendant's motion to dismiss for failure to state a claim upon which relief can be granted should be denied.

## IV

■ The issue on the merits is whether the correction board's decision was arbitrary, capricious, unsupported by substantial evidence or unlawful. Section 1169 of title 10, United States Code, provides:

No regular enlisted member of an armed force may be discharged before his term of service expires, except—

(1) as prescribed by the Secretary concerned;

(2) by sentence of a general or special court martial; or

(3) as otherwise provided by law.

Pursuant to § 1169(1), the Secretary of the Air Force promulgated the weight regulations at issue in this case. Plaintiff does not dispute the validity of these regulations, but plaintiff objects to their application in this case. Plaintiff maintains that the correction board's decision was arbitrary, capricious, unsupported by substan-

tial evidence or unlawful for three reasons. First, plaintiff contends that the board should have concluded that the Air Force was estopped from applying those regulations to him. Second, plaintiff contends that the board should have concluded that the discharge violated due process. Third, plaintiff contends that the board improperly refused to consider evidence that the Air Force did not apply the weight regulations consistently with respect to other members of the military.

### A

Plaintiff contends that the Air Force was estopped from discharging him for violating weight standards because the Air Force had repeatedly overlooked his weight problem over the course of his military career by refusing to discharge him and by continuing to reenlist him even though he was overweight during most of his military career.

■ The common-law doctrine of equitable estoppel is founded on the notion that a litigant should not be permitted to assert a claim or defense that is predicated on his own wrongdoing. The elements that must be established to succeed on an equitable estoppel claim are as follows: (1) the party to be estopped must know the facts, (2) the party to be estopped must intend that his conduct be acted on or must act so that the party asserting the estoppel has a right to believe it is so intended, (3) the party asserting the estoppel must be ignorant of the facts and (4) the party asserting the estoppel must rely on the other party's conduct to his injury. *Emeco Indus., Inc. v. United States*, 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973).

■ The Supreme Court has cast considerable doubt, however, on whether estoppel may run against the government. For example, in *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), the Supreme Court

---

**13.** In *Voge*, 844 F.2d at 780 n. 1, the Federal Circuit recognized that allegations of unlawful discharge due to statutory violations by the military are reviewable under the standard set forth in *Sanders*. Although plaintiff does not allege that the Air Force violated a statute in discharging him, he does allege that the Air Force unlawfully applied Air Force regulations in discharging him.

held that courts may not use the doctrine of equitable estoppel to award money not authorized by Congress. The Court declined to address, however, "[w]hether there are any extreme circumstances that might support estoppel in a case not involving payment from the Treasury." [14] *Id.* at 434, 110 S.Ct. at 2476. In a recent opinion, the Federal Circuit indicated that estoppel may run against the government in certain circumstances and that *OPM v. Richmond* should not be extended beyond its precise holding. *Burnside–Ott Aviation Training Ctr., Inc. v. United States,* 985 F.2d 1574, 1581 (Fed.Cir.1993) (holding that this court "erred in concluding that *Richmond* stands for the proposition that equitable estoppel will not lie against the government for any monetary claim" and remanding for consideration of the facts supporting the estoppel claim); *see Brush v. Office of Personnel Management,* 982 F.2d 1554, 1561–64 (Fed.Cir.1992) (recognizing that *Richmond* was limited to estoppel claims involving payment from the public treasury).

In any event, "it is well settled that the Government may not be estopped on the same terms as any other litigant." [15] *Heckler v. Community Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). The courts have generally agreed that in addition to the traditional elements listed above, a litigant asserting estoppel against the government must establish some type of affirmative misconduct by the government. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 421, 110 S.Ct. 2465, 2470, 110 L.Ed.2d 387 (1990) ("Our own opinions have continued to mention the possibility, in the course of rejecting estoppel arguments, that some type of 'affirmative misconduct' might give rise to estoppel against the Government."); *Schweiker v. Hansen,* 450 U.S. 785, 788–90, 101 S.Ct. 1468, 1470–72, 67 L.Ed.2d 685 (1981) (suggesting that misconduct would be required to estop the government); *Henry v. United States,* 870 F.2d 634, 637 (Fed.Cir.1989) (noting that affirmative misconduct is required to estop the government).

We conclude that plaintiff has established neither the type of affirmative misconduct that would be required to estop the government from applying valid regulations nor the traditional elements for equitable estoppel set forth above.

First, the misconduct alleged in this case—that the Air Force did not strictly enforce the weight standards with respect to plaintiff over his entire military career—does not rise to the level of affirmative misconduct sufficient to estop the military from discharging plaintiff for obesity. The Supreme Court's cases suggest that the "affirmative misconduct" must be quite serious.[16] Whatever that requires, it is not

---

**14.** The Supreme Court did note that the arguments advanced by the government for a "sweeping rule" that estoppel may never run against the government were "'substantial'." *Office of Personnel Management v. Richmond,* 496 U.S. 414, 423, 110 S.Ct. 2465, 2470, 110 L.Ed.2d 387 (1990) (quoting *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984)). The government based its argument on the doctrines of sovereign immunity and separation of powers. *Id.*

**15.** We also note that the separation of powers principles referred to in *OPM v. Richmond* are arguably implicated to a greater extent in the assertion of estoppel claims involving the application of military personnel regulations. Because plaintiff can establish neither the elements for a traditional estoppel claim nor affirmative misconduct, we do not address the broader issue of whether the military can ever be estopped from applying valid personnel regulations.

**16.** *See Schweiker v. Hansen,* 450 U.S. 785, 790, 101 S.Ct. 1468, 1472, 67 L.Ed.2d 685 (1981) (holding that erroneous oral advice did not constitute the type of affirmative misconduct that would be sufficient to estop the government from relying on a valid regulation requiring that certain social security benefit applications be in writing); *INS v. Hibi,* 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973) (holding that neither failure to publicize the rights of naturalization nor the failure to have an authorized naturalization representative available constituted affirmative misconduct sufficient to estop the government from relying on a time bar to filing naturalization petitions); *Montana v. Kennedy,* 366 U.S. 308, 314, 81 S.Ct. 1336, 1340, 6 L.Ed.2d 313 (1961) (holding that statements by an American Consular Officer that petitioner's mother could not return to the United States because of

met here because plaintiff cannot even allege an affirmative representation that weight was not a bar. At the least, a valid estoppel claim would require an affirmative representation that weight was not a bar to plaintiff's military career. Here, plaintiff does not allege that any such representation was made, but instead plaintiff's allegation is limited to the contention that defendant's failure to enforce weight standards earlier in plaintiff's career estopped defendant from enforcing the weight standards against plaintiff in later years.[17]

Second, plaintiff has not satisfied the elements for proving a traditional estoppel claim. Specifically, plaintiff cannot show that he had any right to believe that the government intended to waive his violations of the weight standards. Although plaintiff asserts that he was not aware that Air Force regulations might be applied to discharge him after his 17½ years of service, the administrative record shows that any lack of awareness was unreasonable. The record shows that plaintiff received numerous administrative sanctions for violating weight standards and was warned repeatedly that his continuing failure to lose weight would subject him to even more severe sanctions, including discharge. R. 335, 388, 391–92, 400–01, 430. Accordingly, any reliance on the alleged failure by defendant to strictly enforce weight standards was unreasonable. For this reason, we conclude that plaintiff has failed to establish the traditional elements of an equitable estoppel claim.

Plaintiff relies primarily on *Watkins v. United States Army*, 875 F.2d 699 (9th Cir.1989) (en banc), *cert. denied*, 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990), which held that the Army was estopped from denying reenlistment to Watkins on the grounds of his homosexuality because the Army, knowing of his homosexuality, had repeatedly allowed Watkins to reenlist despite the fact that under Army regulations homosexuality was a nonwaivable "defect" to reenlistment. The Ninth Circuit concluded that the representation that Watkins was eligible for reenlistment on three previous occasions, even though Watkins' known homosexuality made him ineligible under the regulation, constituted affirmative misconduct.

That case is quite different from this one: The Ninth Circuit concluded that the Army violated a mandatory regulation earlier in Watkins' military career and thus gave no indication that he could be subject to administrative sanctions for his nonremediable defect, homosexuality. Unlike *Watkins*, plaintiff had a remediable "defect," and the Air Force repeatedly warned plaintiff that he could be subject to administrative sanctions because of that defect. Admittedly, it is not clear that this distinction would have mattered to the Ninth Circuit. In any event, to the extent that *Watkins* indicates that the military can ever be estopped from enforcing valid regulations based solely on its failure to strictly enforce them with respect to a particular individual, we disagree.

**B**

Plaintiff also alleges that the discharge violated his Fifth Amendment due process rights. Specifically, plaintiff contends that the due process clause of the Fifth Amendment requires this court to estop the government in certain circumstances. In support of this argument, plaintiff relies on *Moser v. United States*, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951).

In *Moser*, a native of Switzerland challenged the holding of the Second Circuit that he was ineligible for United States

her pregnant condition did not constitute affirmative misconduct sufficient to estop the government from relying on petitioner's foreign birth to deny citizenship).

**17.** There is some doubt about whether defendant actually would have been able to discharge plaintiff any earlier than it did. The Air Force regulations require that persons in the weight management program be given progressively more severe administrative sanctions following unsatisfactory weigh-ins before they are discharged. Although the regulations were amended numerous times over the relevant period, the regulations in effect when discharge proceedings were initiated permitted separation only after four unsatisfactory periods. *See* note 5, *supra*.

citizenship. Although a federal statute in effect at that time provided for the exemption of neutral aliens from military service on the condition that one who claims an exemption could not become a United States citizen, the Department of State advised petitioner, who claimed such an exemption, that he could retain his eligibility for citizenship. The Supreme Court held that Moser did not "knowingly and intentionally waive his rights to citizenship" and concluded that "to bar [Moser], nothing less than an intelligent waiver [would be] required by elementary fairness." *Moser*, 341 U.S. at 47, 71 S.Ct. at 556. The Court expressly declined to decide the case "on the basis of any estoppel of the Government." *Id.*

The Court decided that case on the basis of the importance of the right to be eligible for citizenship and the fact that the petitioner had not knowingly and intelligently waived that right. Even if the right to remain on active duty could be said to be similar to the right to be eligible for citizenship, there is no evidence of an unknowing waiver of that right in this case. In other words, *Moser* is entirely inapposite to the facts in this case. Accordingly, plaintiff's contention that his discharge violated the due process clause of the Fifth Amendment is meritless.[18]

**C**

█ Plaintiff's final contention is that the correction board improperly fails to consider the effect of evidence that the weight standards were not enforced consistently with respect to all members of the Air Force. Initially, we note that the failure of an administrative body to expressly accept or reject testimony does not necessarily show that the decision was unsupported by substantial evidence. *See Alberico v. United States*, 783 F.2d 1024, 1029 (Fed.Cir.1986) (concluding that the failure of the correction board to refer to legal and constitutional issues was not arbitrary, capricious, unsupported by substantial evi-

dence or unlawful). We conclude that there was considerable evidence supporting the decision to discharge plaintiff. In fact, plaintiff concedes that he violated weight regulations throughout his military career.

Moreover, the evidence relied on by plaintiff does not show that the correction board acted arbitrarily. The evidence referred to was that commanders in other squadrons of the Air Force did not apply the weight standards as rigorously as did the commander of the squadron to which plaintiff belonged. Given the considerable range of discretion vested in the Air Force and the lack of evidence that the discharge was motivated by factors other than plaintiff's continuing weight problems, we conclude that the decision of the correction board was not arbitrary. Although it may be advisable for the Air Force to apply its regulations consistently, a court cannot substitute its judgment for that of the military and the correction boards.

**D**

For reasons set forth above and based on the administrative record, we conclude that the decision of the Air Force Board for Correction of Military Records under attack in this case was not arbitrary, capricious or unlawful and that it was supported by substantial evidence.

**V**

Based on the foregoing, defendant's dispositive motion filed October 19, 1992, to the extent it seeks dismissal for lack of jurisdiction or for failure to state a claim upon which relief may be granted, is DENIED, but to the extent defendant's motion alternatively seeks summary judgment, it is GRANTED. Consequently, plaintiff's correlative motion filed February 1, 1993 for summary judgment is DENIED. Accordingly, judgment shall be entered in favor of defendant.

---

**18.** Even if plaintiff could establish a liberty or property interest in completing his period of enlistment, he has not alleged any procedural defect with his discharge proceedings that would support a claim for violating his right to procedural due process. Nor has plaintiff alleged substantive due process violations except to the extent that he relies on *Moser*.

Pursuant to RCFC 54(d), costs shall be allowed to the defendant ("the prevailing party").