**Brenda J. MARTINEZ, pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 06–797C.**

United States Court of Federal Claims.

June 29, 2007.

---

Brenda J. Martinez, pro se, Plaintiff.

Gregg M. Schwind, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington D.C., Counsel for Defendant.

Captain Kevin P. McCart, Litigation Attorney, U.S. Army Litigation Division, Arlington, Virginia, of Counsel.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

## I. RELEVANT FACTS.[1]

On August 15, 1984, Plaintiff enlisted in the United States Army and was assigned to work as a medical officer. *See* AR at 5. On August 31, 2000, following a "comprehensive review" of Plaintiff's Official Military Personnel Files ("OMPF"), pursuant to the Army's Qualitative Management Program ("QMP"),[2] the Sergeant First Class Qualitative Management Program Promotion Board ("QMP Board") advised Plaintiff of a decision to discharge and bar her from reenlistment. *Id.* at 182. In support, four Noncommissioned Officer Evaluation Reports ("NCOERs")[3] were submitted, the validity of which is one of the primary points of contention in this lawsuit. *Id.* at 182, 184.

Plaintiff's first adverse NCOER was for the period of April 1—November 30, 1995 ("NCOER–I"), during which time Plaintiff was stationed in Korea. *Id.* at 173–74. The NCOER–I Raters noted competence issues, with other adverse comments, and recom-

---

1. The relevant facts recited herein were derived from the March 19, 2007 Administrative Record ("AR").

2. The QMP was implemented to: enhance the quality of the career enlisted force; selectively retain the best qualified force members; deny continued service to nonproductive force members; and encourage force members to maintain eligibility for further service. *See* AR at 7.

3. The NCOER includes the substantive evaluation of: a Rater; a Senior Rater, who may provide additional comments; and a Reviewer, who either "concurs" or "nonconcurs" with the prior evaluations. *See* AR at 173–74. The NCOER is signed and dated by all three participants and can also be signed by the rated Noncommissioned Officer ("NCO"), although the NCO can decline to do so. *Id.* at 166.

mended that Plaintiff not be promoted at that time. *Id.* at 174.

Plaintiff's second adverse NCOER was for the period of December 1, 1995—April 30, 1996 ("NCOER–II"). *Id.* at 170–71. The NCOER–II reflected continuing concerns about Plaintiff's leadership, responsibility, and accountability. *Id.* at 171. Accordingly, Plaintiff was not recommended for promotion. *Id.* The Reviewer of the NCOER–II submitted a memorandum of nonconcurrence, to reflect "some good points that the [R]ater did not present." *Id.* at 172. The Reviewer emphasized that "[Plaintiff] has good interpersonal trait that allows active interaction with patients, and she can accomplish a mission to standard when she sets her mind to it." *Id.* Nonetheless, this Reviewer agreed with the recommendation not to promote, because of Plaintiff's need for improvement in the areas of competence, leadership and responsibility/accountability. *Id.*

On January 22, 1997, Plaintiff was promoted to Staff Sergeant ("SSG") E–6. *Id.* at 3. On August 19, 1998, Plaintiff reenlisted for a six-year term. *Id.* Thereafter, Plaintiff received a third adverse NCOER for the period of May 1, 1998—April 30, 1999 ("NCOER–III"), during which time she was stationed at Fort Bragg, North Carolina. *Id.* at 166–67. The NCOER–III stated that Plaintiff needed improvement in the areas of competence and leadership. *Id.* The NCOER–III recommended that Plaintiff not be promoted, but instead be considered for QMP review. *Id.* Nevertheless, on June 14, 1999, Plaintiff received the Army Good Conduct Medal for her service from August 15, 1996 to August 14, 1999. *Id.* at 142.

Subsequently, Plaintiff received a fourth adverse NCOER for the period of May 1, 1999—January 31, 2000 ("NCOER–IV"),

while stationed at Fort Bragg, North Carolina. *Id.* at 164–65. The NCOER–IV noted that Plaintiff still required improvement in competence, leadership, training, and responsibility/accountability. *Id.* Other adverse comments were made. *Id.* at 165. Again, the recommendation was for no promotion at that time. *Id.*

On October 17, 2000, to his credit, the Reviewer of the NCOER–III, Captain Hayes, forwarded a character reference to the Army Board for the Correction of Military Records Appeals Board ("ABCMR"), admitting that he had "issues with the harshness of [the NCOER–III]," but deferred to the judgment of the Rater and Senior Rater. *Id.* at 146. Significantly, Captain Hayes stated: "I feel it is in the best interest of the Army to allow [Plaintiff] to remain on active duty until retirement.... Now, serving as a Company Commander, I see where I should have taken a harsher stance for [Plaintiff] and not allowed for such injustice."[4] *Id.*

On December 20, 2000, Plaintiff appealed the QMP Board's August 31, 2000 decision to discharge and bar her from reenlistment. *Id.* at 232. On April 9, 2001, the Department of the Army Standby Board denied Plaintiff's appeal. *Id.* On November 8, 2001, Plaintiff honorably was discharged with a Separation Code JGH[5] and Reentry Code RE–4.[6] *Id.* at 235–36. At the time of discharge, Plaintiff had served the United States Army for 17 years, 2 months, and 24 days. *Id.* at 7.

On September 19, 2002, Plaintiff appealed to the ABCMR, requesting that: 1) the NCOER–IV be removed from Plaintiff's record; 2) the August 31, 2000 QMP discharge be set aside; 3) Plaintiff's Reentry Code be changed from RE–4 to RE–1;[7] and 4) Plaintiff be retired, pursuant to the Temporary

---

4. Plaintiff has submitted two other character references that don't specifically address the adverse NCOERs and are not written by her Raters or Reviewers. *See* AR at 147–48. These reference the NCOER–III and NCOER–IV rating periods. *Id.* In addition, Plaintiff has submitted a favorable character reference from after she left Fort Bragg. *Id.* at 151.

5. The Separation Code of "JGH" applies when an "applicant [is] discharged for not meeting retention standards of the Army." AR at 92.

6. The Reentry Code "RE–4" applies when a person is "separated from their last period of service with non-waivable disqualifications." AR at 92. This includes anyone with "a [Department of the Army]-imposed bar to reenlistment in effect at the time of separation." *Id.*

7. The Reentry Code "RE–1" means "immediately eligible for reenlistment at time of separation." Army Reg. 601–210, Table 3–1.

Early Retirement Authority, or in the alternative, be paid full separation pay in lieu of the half separation pay she received on discharge. *Id.* at 111–51.

In support of her appeal, Plaintiff asserted that she was pressured to make a loan to the NCOER–IV Senior Rater, and that negative comments in the NCOER–IV were made in retaliation for attempts to collect payment. *Id.* at 126–27. Plaintiff provided the ABCMR with evidence of the loan and that Plaintiff received repayment, only after she retained counsel. *Id.* at 128–31. On November 24, 2003, the ABCMR denied Plaintiff's appeal. *Id.* at 95.

On October 28, 2004, Plaintiff asked the ABCMR for reconsideration, based on two supplements. *Id.* at 10, 13–23, 24–69, 70–74. Plaintiff requested that: 1) the August 31, 2000 QMP discharge be set aside; 2) Plaintiff constructively be reinstated to active duty through August 19, 2004 (the date when Plaintiff's latest enlistment period would have ended); 3) Plaintiff be retired with over 20 years of military service; 4) Plaintiff be awarded back pay for the constructive active duty and retirement, and; 5) Plaintiff's discharge form be corrected to reflect a voluntary retirement. *Id.* at 13.

In Plaintiff's March 1, 2005 Amended Supplemental Statement to the ABCMR, Plaintiff represented that the NCOER–III was backdated to May 26, 1999, however, Plaintiff was not asked to sign until February 29, 2000, because the Senior Rater retired over the summer of 1999 and only returned to finish and sign the evaluation, after "prodding" by another Sergeant. *Id.* at 26. Plaintiff refused to sign the NCOER–III, because:

(a). The [R]ater did not perform quarterly performance counseling beginning May 1998, but only one of record at the end of the rating period on 19 March 1999 signed by the rater without comment on 12 April 1999;

(b) The report was not "forwarded" to her to sign as alleged in May 1999, and she refused to authenticate that back-date. Therefore, the PSC official typed in

"NCO refused to sign" and left the date blank. Martinez also recalls that there was "a big flap about having to submit a letter of lateness" when filing the [NCOER–III].[8]

*Id.* at 26.

On August 16, 2005, the ABCMR denied Plaintiff's request for reconsideration. *Id.* at 2–9.

## II. PROCEDURAL HISTORY.

On November 28, 2006, a Complaint ("Compl.") was filed in the United States Court of Federal Claims with Exhibits ("PX A—G"). The Complaint alleges that Plaintiff's termination from the United States Army was "without cause, justification or in accordance with the Army's own regulations governing involuntary separation." Compl. at 2. The Complaint requests that: 1) Plaintiff's August 31, 2000 QMP discharge be set aside; 2) Plaintiff constructively be reinstated to active duty through August 19, 2004; 3) Plaintiff be retired with over 20 years of military service; 4) Plaintiff be awarded back pay for constructive active duty and retirement; 5) Plaintiff's discharge form be corrected to reflect a voluntary retirement; and 6) Plaintiff be promoted to the next highest rank of SFC/E7 for back pay and retirement allowances. *Id.* at 2–3.

On December 22, 2006, Plaintiff filed an Addendum to the Complaint to include Exhibit H, Plaintiff's returned appeal to remove the NCOER–IV from her OMPF. On March 8, 2007, Plaintiff filed an Exhibit List and Summary of Facts and Law.

On March 19, 2007, the Administrative Record was filed. On that same date, the Government filed a Motion for Judgment on the Administrative Record, together with a Statement of Facts ("Gov't Mot. J. AR") and Exhibits ("DX 1–6"). On May 21, 2007, Plaintiff filed a Cross–Motion for Judgment on the Administrative Record and Response to the Government's Motion, together with a Statement of Facts ("Pl.Mot. J. AR"). On June 20, 2007, the Government filed a Reply

---

8. Plaintiff also alleged that she never received the NCOER–III before she left Fort Bragg in April 2000, but this contradicts prior testimony that she refused to sign the NCOER–III on February 29, 2000, "the day before she [left for] Germany." *See* AR at 26.

and Response to Plaintiff's May 21, 2007 Cross–Motion for Judgment on the Administrative Record ("Gov't Reply").

## III. DISCUSSION.

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . the Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (citations omitted). Therefore, in order to pursue a substantive right, under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the

right to money damages. In the parlance of Tucker Act cases, that source must be 'money-mandating.' " (citations omitted)).[9]

■ For enlisted personnel, the money-mandating provisions of the Military Pay Act of 1992 ("MPA") grant the United States Court of Federal Claims jurisdiction to adjudicate requests for reinstatement, back pay, or both. *See* 37 U.S.C. § 204 (Section 204(a) of the MPA provides in relevant part: "a member of the uniform service who is on active duty . . . [is] entitled to the basic pay of the pay grade to which assigned"); *see also Martinez v. United States*, 333 F.3d 1295, 1303 (Fed.Cir.2003) (*en banc*) ("In the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the [MPA]."); *Sargisson v. United States*, 913 F.2d 918, 920 (Fed.Cir. 1990) (holding claims for reinstatement and back pay stemming from allegedly unlawful separation from active duty in the military are within the United States Court of Federal Claim's jurisdiction under 28 U.S.C. § 1491).

■ In addition, the United States Court of Federal Claims has authority to provide equitable relief if the action is "incidental of and collateral to" a claim for monetary damages. *See* 28 U.S.C. § 1491(a)(2); *see also Passaro v. United States*, 774 F.2d 456, 459 (Fed.Cir.1985) ("Equity, to the extent that it can be administered by the [United States Court of Federal Claims], exists as an incident of general jurisdiction under the Tucker Act[.]" (citations omitted)). Specifically, in MPA cases, the court only has "power to order the correction of military records . . . incidental of and collateral to its award of a money judgment." *Voge v. United States*, 844 F.2d 776, 781 (Fed.Cir.1988) (quotation and citation omitted); *see also Austin v. United States*, 206 Ct.Cl. 719, 723 (1975) (In

---

9. Regarding the money-mandating requirement of the Tucker Act, the United States Supreme Court has held that: "This 'fair interpretation' rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity. . . . It is enough, then, that a statute creating a Tucker Act right be *reasonably amenable* to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be 'lightly inferred' . . .

a *fair inference* will do." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (emphasis added). The United States Court of Appeals for the Federal Circuit has recognized, but not resolved, whether the United States Supreme Court, in restating the money-mandating test, may have made it less stringent. *See Fisher*, 402 F.3d at 1173–74 (citing *White Mountain*, 537 U.S. at 472–73, 123 S.Ct. 1126).

a Naval discharge case, the United States Court of Claims (predecessor to this court) determined that it has no power "to grant affirmative non-monetary relief unless it is tied and subordinate to a monetary award[.]").

In this case, the Complaint's requests for back pay and retirement allowances, pursuant to the alleged illegal discharge, are claims for monetary relief within the jurisdictional bounds of the Tucker Act and MPA. Compl. at 2–3. In addition, the equitable relief requested, *i.e.*, that the court: 1) set aside Plaintiff's QMP discharge; 2) constructively reinstate her to active duty to complete her last enlistment period; 3) voluntarily retire her at the end of her last enlistment period with over 20 years of service; and 4) correct her discharge form to reflect an honorable voluntary retirement with consistent codes, are "incidental of and collateral to" Plaintiff's claim for back pay. *See* Compl. at 2; *see also* 28 U.S.C. § 1491(a)(2).

### B. Justiciability.

When final military decisions are challenged, the court is obligated first to consider the justiciability of the legal question presented. *See Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("[J]udges are not given the task of running the [military]. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates."). The United States Court of Appeals for the Federal Circuit specifically has held that "determining who is fit or unfit to serve in the armed services is not a judicial province." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983) (holding that the merits of the military's decisions to release a service member from active duty are non-justiciable). Moreover, "[a] claim of error in a promotion decision presents a nonjusticiable controversy because there are no statutory or regulatory standards against which a court can review such a decision." *Fluellen v. United States*, 225 F.3d 1298, 1304 (Fed.Cir.2000).

Nevertheless, the United States Court of Federal Claims has authority to ascertain the procedural validity of a military decision. *See Murphy v. United States*, 993 F.2d 871, 874 (Fed.Cir.1993) ("When the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some."). Therefore, when the military issues a final decision, the court can intervene only to ensure that the decision was made in a proper procedural manner. *See Adkins v. United States*, 68 F.3d 1317, 1323 (Fed.Cir.1995) ("[A]lthough the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." (emphasis in original)).

### C. *Pro Se* Pleading Requirements.

In the United States Court of Federal Claims, the pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (*pro se* complaints "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers." (quotation and citation omitted)). Indeed, it has been the tradition of the court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [the complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed.Cir.1995).

### D. Standard For Failure To State A Claim Upon Which Relief Can Be Granted—RCFC 12(b)(6).

United States Court of Federal Claims' Rule ("RCFC") 12(b)(6) provides: "[d]ismissal for failure to state a claim under Rule 12(b)(6) ... is proper only when a plaintiff 'can prove no set of facts in support of his claim which would entitle him to relief.'" *Adams v. United States*, 391 F.3d 1212, 1218 (Fed.Cir.2004) (quoting *Leider v. United*

*States*, 301 F.3d 1290, 1295 (Fed.Cir.2002)). In reviewing a motion to dismiss for failure to state a claim, this court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed. Cir.2006) (citations omitted).

### E. Standard For Judgment On The Administrative Record—RCFC 52.1.

Review of a military correction board's decision is "limited to the administrative record before the deciding official or officials." *Wyatt v. United States*, 23 Cl.Ct. 314, 319 (1991) (citing *Long v. United States*, 12 Cl. Ct. 174, 177 (1987)). The standard of review for a motion for judgment on the administrative record, pursuant to RCFC 52. 1, is similar but not identical to a motion for summary judgment under RCFC 56. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed.Cir.2005). The standard for a motion for summary judgment is whether the moving party has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In contrast, the standard for judgment on the administrative record is narrower, *i.e.*, given all the disputed and undisputed facts in the administrative record, whether the plaintiff has met the burden of proof to show that the decision was not in accordance with the law. *See Bannum*, 404 F.3d at 1357 (instructing the court to make "factual findings under RCFC 52.1 from the [limited] record evidence as if it were conducting a trial on the record."). The existence of a material question of fact neither precludes granting a motion for judgment on the administrative record, nor requires the court to conduct evidentiary proceedings. *Id.*

Review is further limited to determining whether applicable procedures were followed and whether the military board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States*, 163 F.3d 1304, 1312 (Fed.Cir.1998) (citations omitted); *see also Hoskins v. United States*, 40 Fed.Cl. 259,

271–72 (1998) ("Once a plaintiff has sought relief from a correction board ... the plaintiff is bound by that board's determination unless he can satisfy the difficult standard of proof that the correction board's decision was illegal because it was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, or money is due." (citations omitted)). Specifically, the court may not retry the case on the merits. *See Heisig*, 719 F.2d at 1156 ("Although the court might disagree with the board's decision, it cannot substitute its own judgment for that of the board if reasonable minds could reach differing resolutions of the disputed matter."); *see also Watson v. Ark. Nat'l Guard*, 886 F.2d 1004, 1011 n. 16 (8th Cir.1989) (Review of a military correction board's decisions are limited to "whether the Board's decisionmaking process was deficient, not whether the decision was correct." (citations omitted)); *Van Cleave v. United States*, 70 Fed.Cl. 674, 678 (2006) (The United States Court of Federal Claims does not act as a "super correction board[.]").

Moreover, the plaintiff bears the burden of proving any deficiency by "cogent and clearly convincing evidence." *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.1986). Such proof must also "overcome the strong, but rebuttable, presumption that the administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." *Porter*, 163 F.3d at 1316 (quoting *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 813 (1979)).

### F. The Court's Resolution Of The Government's Motion To Dismiss.

The Complaint requests that Plaintiff be promoted to the next highest rank of SFC/E7 for retirement and pay purposes, because Plaintiff completed all training prerequisites for the promotion and believes that she "would have been promoted to the next highest rank at some point." Compl. at 3–4.

The Government moves to dismiss for failure to state a claim, contending that a soldier has no affirmative right to a rank, unless the

soldier has been promoted by the military. *See* Gov't Mot. J. AR at 11–12 (citing *Testan*, 424 U.S. at 402, 96 S.Ct. 948) ("The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it." (citation omitted)). Because the Army did not select Plaintiff for promotion, the Government argues that no such entitlement exists. *See* Gov't Mot. J. AR at 12. Moreover, because courts are not in a position to " 'resolve and pass upon the highly complicated questions and problems involved in the promotion procedure,' " the Government insists that the court does not have the competency to decide the merits of Plaintiff's requested promotion. *Id.* (quoting *Porter*, 163 F.3d at 1316–17 (citations omitted)). In addition, the Government argues that Plaintiff did not request a promotion in any of the prior administrative challenges and therefore, waived any right to raise that issue in this court. *Id.* at 13 (citing *Doyle v. United States*, 220 Ct.Cl. 285, 599 F.2d 984, 1000 (1979) ("[P]laintiffs have waived any objection to the [issue] when they were well aware of [it] and chose not to raise the objection[.]")).

The United States Court of Federal Claims is obligated to consider the jurisdictional basis of a claim *sua sponte*. *See* RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *see also Consolidation Coal Co. v. United States*, 351 F.3d 1374, 1378 (Fed.Cir.2003) ("[U]nder federal rules any court at any stage in the proceedings may address jurisdictional issues. Thus, even if the issue is not properly raised, this court *sua sponte*

may consider all bases for the trial court's jurisdiction.").

Although the court has authority to provide equitable relief "incident of and collateral to" a claim for monetary damages, Plaintiff's request for promotion is independent of her claim for back pay and is not inextricably tied to the merits of the QMP discharge. *See Carman v. United States*, 221 Ct.Cl. 165, 602 F.2d 946, 949 (1979) (holding that there must be a "sufficient nexus" between the money and the equitable claim for the Claims Court to consider an equitable claim); *see also Austin*, 206 Ct.Cl. at 723 (holding that the court has no power "to grant affirmative non-monetary relief unless it is tied and subordinate to a monetary award"). Accordingly, the court has determined it does not have jurisdiction to adjudicate Plaintiff's claim for a promotion.[10]

■ Assuming, *arguendo*, that the court had jurisdiction, the court would, nevertheless, decline to exercise that authority, because administration of military promotions are "left to the discretion of the military." *See Fluellen*, 225 F.3d at 1304. In this case, Plaintiff was denied a promotion to SFC/E7 when the QMP Board discharged and barred her from reenlistment. *See* AR at 38. Considering the merits of Plaintiff's promotion request would place the court in an untenable position of substituting its judgment for that of the QMP Board and ABCMR. *See Dysart v. United States*, 369 F.3d 1303, 1315 (Fed.Cir.2004) ("[T]he subject of military promotions is beyond the competence of courts to review."); *see also Voge*, 844 F.2d at 782 ("[A]bsent statute or regulation entitling a service member to promotion as a

---

10. In addition, Plaintiff's failure to raise this issue either in the original request to the ABCMR or on reconsideration constitutes a waiver of those issues in future litigation. *See Frecht v. United States*, 25 Cl.Ct. 121, 131 n. 7 (1992) ("Failure to timely raise objections and issues to a board of inquiry constitutes a waiver of that right in subsequent litigation." (citations omitted)); *see also Martinez v. United States*, 914 F.2d 1486, 1489 (1990) ("[Plaintiff] must have raised the claim itself, not merely have pointed to facts that, in his view and in hindsight, support it."). The *pro se* nature of the Complaint, however, requires that the court examine the record "to see if [a *pro se*] plaintiff has a cause of action

somewhere displayed." *Ruderer*, 412 F.2d at 1292; *see also Hughes*, 449 U.S. at 9, 101 S.Ct. 173 (1980) (*pro se* complaints "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers" (quotation and citation omitted)). Nonetheless, in examining the Administrative Record, the court was unable to find a single instance where Plaintiff either requested promotion or asserted a right to promotion. Although significant leeway is given to the complaint of a *pro se* plaintiff with respect to procedural validity, the court cannot "excuse [the complaint's] failures." *Henke*, 60 F.3d at 799.

matter of law, the Claims Court has no authority to entertain [such a] claim").

Moreover, in this case, even assuming that Plaintiff fulfilled all the prerequisites for receiving a promotion and that Plaintiff's personal beliefs regarding the inevitability of her promotion are genuine, there is still the requirement that a promotion board recommend her for promotion. *See* Army Reg. 600–8–19 ¶ 4–3(d) ("The selection board will recommend a specified number of Soldiers by MOS from the zones of consideration who are the best qualified to meet the needs of the Army."). Because the QMP Board denied Plaintiff promotion, discharged and barred her from reenlistment, there is no set of facts or reasonable inferences that would justify Plaintiff's promotion. *See* RCFC 12(b)(6).

### G. The Court's Resolution Of The Government's Motion For Judgment On The Administrative Record.

### 1. The ABCMR Decision Was Not Procedurally Deficient.

The Complaint also alleges that the original August 31, 2000 QMP Board decision should not have relied on the NCOER–IV, but instead should have considered Plaintiff's post-NCOERIV performance in Germany. *See* PXE at 10–11; *see also* AR at 121–22.

The Administrative Record indicates that the ABCMR was aware of and addressed the QMP Board's reliance on NCOER–IV. *See* AR at 89–90. The Administrative Record also indicates that the ABCMR had knowledge of Plaintiff's improved performance after she left Fort Bragg, but did not consider this information to be dispositive. *Id.* at 149–151; *see also* Army Reg. 635–200 ¶ 19–

11(d)(1) ("The mere fact that a soldier's performance has improved or that the soldier's file contains material error is not necessarily sufficient to overcome the reason for QMP selection. *The appeal board may determine that the reason for QMP selection still applies even in light of the improved performance or correction of an error.*" (emphasis added)).

### 2. The ABCMR Decision Was Not Arbitrary, Capricious, Unsupported By Substantial Evidence Or Contrary To Law.

### a. The Decision Not To Remove The NCOER–IV From Plaintiff's OMPF.

■ Plaintiff challenges the ABCMR's decision on the grounds that the NCOER–IV was adverse due to the Senior Rater's bias. *See* AR at 112–14. Plaintiff provided evidence that she made a loan to the Senior Rater prior to the rating, but repayment did not occur until five months after the NCOER–IV was written, and only after Plaintiff was forced to retain a lawyer to recover. *Id.* at 113. Plaintiff contends that "[o]ne can certainly infer a certain amount of coercion or extortion," and that the ABCMR's belief that the transaction did not "taint the evaluations is simply inaccurate." [11] Pl. Mot. J. AR at 6.

The Government counters that Plaintiff's challenge to the NCOER–IV was known and addressed by the ABCMR and the ABCMR did not act in a manner that was "arbitrary, capricious, or contrary to law or regulation." Gov't Mot. J. AR at 15. Moreover, the Government argues that the NCOER–IV was consistent with a downward trend in Plaintiff's historical performance. *Id.* at 14–15.

---

11. Plaintiff also contends that the appeal of the NCOER–IV was rejected due to an outdated Personnel Qualification Form ("2–1 form"). *See* Pl. Mot. J. AR at 6. Plaintiff asserts that the "record" indicates repeated attempts to rebut the NCOER–I, as well as the other NCOERs, all with the response that an updated 2–1 form was required. *Id.* Plaintiff states that this required form was "mysteriously no longer available for retrieval in an Army wide data base [sic], as it had been for the 17 years previous." *Id.; see also* AR at 112 (referencing the unsuccessful appeal of the NCOER–IV). The Government counters that

Plaintiff attempted to appeal the NCOER–IV in November of 2000, but that the appeal was returned for "noncompliance." *See* Gov't Mot. J. AR at 7 (citing PXH).

The court notes that there is no evidence in the Administrative Record that Plaintiff further pursued the appeal. Moreover, Plaintiff's contention that impropriety surrounded the NCOER–IV appeal is irrelevant, because in reviewing the QMP Board's decision, the ABCMR reviewed and reasserted the validity of the NCOER–IV. *See* AR at 89–90.

The Administrative Record evidences that the ABCMR was aware of the circumstances surrounding the NCOER–IV and provided cogent reasons for rejecting any inference of prejudice. *See* AR at 89–90. In fact, other than Plaintiff's testimony, there is no evidence that the NCOER–IV was influenced by any adverse relationship with the Senior Rater. *Id.* at 126–27.[12] Given the presumption that the Senior Rater, like "other public officials, discharge[s] ... duties correctly, lawfully, and in good faith," the Administrative Record supports the ABCMR's affirmation of the NCOER–IV's validity. *Porter,* 163 F.3d at 1316 (quoting *Sanders,* 594 F.2d at 813). Therefore, the ABCMR's decision not to remove the NCOER–IV from Plaintiff's OMPF was not "arbitrary, capricious, unsupported by the evidence or contrary to law." *Id.* at 1312.

**b. The Decision Not To Set Aside Plaintiff's QMP Discharge And Bar To Reenlistment.**

[redacted] Plaintiff also challenges the validity of the QMP discharge, in light of Plaintiff's Army Good Conduct Medal ("AGCM") for periods of service that coincide with the adverse NCOERs. *See* Pl. Mot. J. AR at 4. Plaintiff contends that the award of an AGCM renders a soldier "immune ... from later attempts to discredit or portray the soldier's service as below minimum standards or efficiency in decline [sic]." *Id.* In addition, Plaintiff asserts that the AGCM evaluation criteria and the QMP screening criteria are "effectively the same." *Id.*[13] Therefore, Plaintiff reasons that when a soldier receives both the AGCM and adverse NCOERs for the same period, the AGCM takes precedent, relying on "the presumption of regularity for the [AGCM]" and Army Reg. 600–8–22 (Military Awards). *Id.*

In addition, Plaintiff contends that the Army acted inconsistently by promoting and reenlisting her after issuing the adverse NCOER–I and NCOER–II. *See* Pl. Mot. J. AR at 3–4; *see also* AR at 13. Plaintiff argues that "[i]t follows that when the Army promoted her and allowed reenlistment, it was waiving any prior duty performance reports (NCOERs) as a source to later involuntarily discharge her on the basis of failing to meet minimum standards of retention." AR at 13. Plaintiff further argues that the Army is equitably estopped from discharging and barring her from reenlistment based on evaluations in existence at the time she was awarded an AGCM, subsequently promoted, and then reenlisted. *See* Pl. Mot. J. AR at 3–4; AR at 13 (citing *Watkins v. United States,* 875 F.2d 699 (9th Cir.1989) (holding that the Army was estopped from denying a soldier's pending reenlistment and issuing a discharge based on homosexuality, because the Army knew of soldier's past admissions from official records and nevertheless enlisted him)).

Plaintiff also challenges the NCOER–III and the NCOER–IV in light of positive character references from: the Reviewer of NCOER–III; her First Sergeant Michael Choice ("1SG Choice") during the period of NCOER–III and NCOER–IV; and a Colonel Calder who inspected her unit on two occasions. *See* AR at 19. Plaintiff contrasts the laudatory comments of the recommenders with the adverse comments in the NCOER–III and NCOER–IV, during the same period of time. *Id.* at 19.

The Government counters that the ABCMR addressed these arguments, explaining that the standard for QMP review encompasses the additional consideration of "potential for advancement," while the AGCM only assess a soldier's performance for his or her current rank. *See* Gov't Mot. J.

12. The ABCMR observed that the "[R]atee/[S]enior [R]ater relationship did not exist" at the time the loan was made. *See* AR at 89.

13. Plaintiff compares: QMP selection criteria of: "[d]ecline in efficiency and performance over a continuing period;" with AGCM criteria for disqualification of: "when manner of performance or efficiency declines." AR at 16. Plaintiff also compares the language from the QMP notice: "[The QMP] requires that [NCOs] demonstrate professional ability by performance of duty and standards of conduct which set an example for junior soldiers;" with the AGCM character of service standard, *i.e.,* soldiers must "[c]onduct themselves in such an exemplary manner as to distinguish them from their fellow soldiers." *Id.* at 16–17.

AR at 16, 18.[14] Moreover, the Government maintains that Plaintiff's AGCM award, reenlistment, and promotion occurred at a lower level of the Army's command authority than the QMP decision. *See* Gov't Mot. J. AR at 17. Furthermore, the Government argues that "there is no internal inconsistency in allowing the plaintiff to reenlist, be promoted, and receive the Good Conduct Medal *prior* to an HQDA-level decision to bar her from reenlistment." *Id.* (emphasis added).

In addition, the Government relies on 1SG Choice's account of the circumstances surrounding Plaintiff's AGCM award that " 'there [was] nothing of sufficient magnitude to deny her the [AGCM].' " *Id.* (quoting AR at 32). The Government, therefore, concludes that "there were concerns with [Plaintiff's] performance, as reflected in her many substandard NCOERs, but [the Army] did not believe they were sufficient to deny her an award that only required meeting the minimum *local performance standard.*" *Id.* at 19 (emphasis added).

The Government addresses Plaintiff's equitable estoppel argument by asserting that Plaintiff did not allege affirmative misconduct, a traditional element of estoppel required to estop the government. *See* Gov't Reply at 4 (citing *United States v. Ford Motor Co.,* 463 F.3d 1267, 1279 (Fed.Cir. 2006)). The Government also contends that the Administrative Record does not reflect "evidence sufficient to overcome the strong, but rebuttable, presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." *Id.* (quoting *Sanders,* 594 F.2d at 813). Moreover, the Government notes that the United States Court of Federal Claims consistently has declined to adopt the *Watkins* holding. *Id.* at 4–6 (citing *McIntyre v. United States,* 30 Fed.Cl. 207, 215 n. 6 (1993) ("[T]o apply estoppel here against the government … would wreak

havoc on the QMP, for any NJPs [non-judicial punishments], which at present are an important factor in QMP screening, would be 'wiped clean' at the start of each new term of enlistment, an effect unintended by the Army in its QMP screening and one which the court refuses to endorse." (citations omitted)); *Peters v. United States,* 28 Fed.Cl. 162, 170 (1993) ("[T]o the extent that *Watkins* indicates that the military can ever be estopped from enforcing valid regulations based solely on its failure to enforce them with respect to a particular individual, we disagree.")). The Government also contends that the governing regulations required the QMP Board to examine all of Plaintiff's NCOERs and the assertion that the Board should not have considered them contradicts this requirement. *See* Gov't Reply at 6–7 (citing Army. Reg. 635–200, ¶ 19–6(b)).

As to Plaintiff's positive character references, the Government contends that they were weighed by the QMP Board and the ABCMR on appeal. *See* Gov't Mot. J. AR at 19; *see also* AR at 147–48, 151. In any event, the Government argues that Plaintiff's adverse NCOERs were not the exclusive factor relied upon in the QMP bar decision, citing Plaintiff's lack of "end of tour award[s]," as an additional example of her "substandard record." Gov't Mot. J. AR at 19

The court has determined that the apparent inconsistency between Plaintiff's AGCM award and subsequent discharge may be explained by the difference between the purposes and standards of evaluation associated with the award and the QMP program. The discretion to award the AGCM is vested solely in the immediate unit's commander. *See* Army Reg. 600–8–22 ¶ 4–4. Although the "Character of service" requirements set guidelines for who qualifies, there is no authority above the unit commander to assess the merits of the award (after merely con-

**14.** In support, the Government asserts that the QMP is designed to ensure that: " 'NCOs whose performance, conduct, *and/or potential for advancement* do not meet Army standards, as determined by the approved recommendations of HQDA centralized selection boards responsible for QMP screening, will be denied continued service.' " *Id.* Gov't Mot. J. AR at 18 (quoting

Army Reg. 35–200 ¶ 19–2(a)) (emphasis added). In contrast, the AGCM standard for job performance is that a " 'soldier's efficiency must be evaluated and must meet all requirements and expectations for that soldier's grade, MOS, and experience.' " *Id.* (quoting Army Reg. 600–8–22, ¶ 4–6(d)) (emphasis added).

sulting with the candidate's rating chain). *Id.* at ¶ 4–6; *see also* AR at 31. To *disqualify* a soldier for the award, a unit commander must prepare a statement laying out his or her rationale that is then be presented to the soldier for an opportunity to respond. *Id.* ¶ 4–8(c) (emphasis added). In contrast, the QMP is a NCO assessment to screen officers "whose performance, conduct, *and/or potential for advancement* do not meet Army standards, as determined by the approved recommendations of HQDA centralized selection boards responsible for QMP screening." Army Reg. 635–200 ¶ 19–2(a) (emphasis added). Of particular significance is the additional purpose of removing soldiers that the Army determines do not have potential for advancement, e.g., a bar to reenlistment when a soldier "[d]ecline[s] in efficiency and performance over a continuing period, as reflected by [NCOERs.]" *Id.* at ¶ 19–7(c). Because the NCO raters consider a soldier's potential for advancement, removal by the QMP Board is not inconsistent with award of an AGCM.

In this case, the QMP Board examined the AGCM award, along with all of Plaintiff's other favorable characteristics, and weighed them against her unfavorable characteristics. *See* AR at 8–9. On appeal, the ABCMR concluded that there was no reason to disturb the QMP Board's findings. *Id.* ("The evidence presented does not demonstrate the existence of a probable error or injustice."); *see also McIntyre*, 30 Fed.Cl. at 215 ("The QMP was designed to advance productive and progressive soldiers and deny reenlistment to nonprogressive ones, thereby thinning the ranks to develop a smaller, more elite contingent of enlisted leaders[.]").

For these reasons, the court has determined that the ABCMR's decision to uphold Plaintiff's discharge and bar to reenlistment was not "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter*, 163 F.3d at 1312. Moreover, in this case, Plaintiff has not provided any evidence to show that the Army violated QMP guidelines to "overcome the strong, but rebuttable,

presumption that the administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." *Porter*, 163 F.3d at 1316 (quoting *Sanders*, 594 F.2d at 813). Therefore, Plaintiff's requests for: 1) constructive reinstatement to active duty through August 19, 2004; 2) retirement with over 20 years of military service; 3) back pay and retirement benefits consistent with reinstatement; and 4) administrative correction of military records to reflect voluntary retirement, are denied.

**c. The Decision Not To Change Plaintiff's Reentry Code.**

In addition, Plaintiff contends that her reentry code should be changed, because "no provision under Army Regulations … provides for a fully Honorable Discharge with an RE Code of 4 absent misconduct." Compl. at 2. The Government, however, cites Army Regulation 601–210 ¶ 3–22(c), providing that RE–4 "[a]pplies to: 'person separated from last period of service with a *non-waivable* disqualification. This includes anyone with a Department of the Army imposed bar t[o] reenlistment in effect at time of separation[.]'" Gov't Mot. J. AR at 20 (citing Army Reg. 601–210 ¶ 3–22(c)).

Because a QMP bar to reenlistment is a Department of the Army imposed bar to reenlistment and Plaintiff's QMP bar was properly decided, the court has determined that Plaintiff is not entitled to have her reentry code changed. *Id.* at 20–21; *see also* Army Reg. 601–210 ¶ 3–22(c).

**d. The Decision Not To Grant Plaintiff Temporary Early Retirement.**

At the ABCMR, Plaintiff requested that she be retired, pursuant to the Temporary Early Retirement Authority ("TERA"),[15] as an alternative to retention for the remainder of her enlistment term. *See* AR at 112, 121–23. She did not formally renew this request in her Complaint in the United States Court of Federal Claims.

---

**15.** TERA was enacted by the Fiscal Year 1993 Defense Authorization Act as a draw-down tool effective through October 1, 1999. *See* Pub.L. No. 102–484, § 4403 (1992); *see also* Pub.L. No.

103–160, § 561 (1993). The authority provides for retirement of "soldiers who have served at least fifteen years but fewer than twenty years." *See* Pub.L. No. 102–484, § 4403.

The Government argues that retirement under TERA requires that a soldier apply and be approved for the program. *See* Gov't Mot. J. AR at 21. The Government notes that while Plaintiff did initially request retirement, pursuant to TERA, she was instructed to forward her request through her chain of command, but there is no evidence in the Administrative Record that this was ever accomplished. *Id.* at 21 n. 3.[16]

To the extent that Plaintiff requests retirement pursuant to TERA, the court has determined that, because Plaintiff's attempt to apply for early retirement was unsuccessful, the ABCMR was correct in finding that the Army was under no duty to grant Plaintiff such relief.[17]

### e. The Decision Not To Grant Plaintiff Full Separation Pay In Lieu Of Half Separation Pay.

At the ABCMR, Plaintiff also requested full separation pay, in lieu of the half separation pay awarded to soldiers who are barred from reenlistment pursuant to the QMP. *See* AR at 112, 123–24; *see also* Army Circular 635–92–1 ¶ 2–3(a) (half separation pay will be paid to "[s]oldiers who are denied retention as a result of a DA QMP . . . bar to reenlistment and who do not voluntarily separate under the provision of para 16–5, [Army Regulation] 635–200."). Plaintiff's request was based on an exception to that provision that "[i]n extraordinary circumstances, the Secretary of the Army may award full separation pay to soldiers otherwise eligible for half separation pay when the specific reasons for separation and the overall quality of the soldier's service have been such that denial of full pay would be clearly unjust." Army Circular 635–92–1 ¶ 2–3(a); *see also* AR at 123. Plaintiff, however, did not specifically request such relief from this court.

To the extent Plaintiff requests full separation pay, the court has determined that the ABCMR identified the controlling guidance and properly concluded that Plaintiff was only entitled to half separation pay. *See* AR at 87, 93.

### IV. CONCLUSION.

For the aforementioned reasons, the Government's March 19, 2007 Motion to Dismiss and Motion for Judgment on the Administrative Record are granted. Plaintiff's May 21, 2007 Cross–Motion for Judgment on the Administrative Record is denied. The Clerk of the United States Court of Federal Claims is directed to enter judgment for the Government.

**IT IS SO ORDERED.**

---

**16.** The Complaint references a letter from Plaintiff's attorney to a Lieutenant–Colonel Olson at the U.S. Army Enlisted Records and Evaluation Center, alleging that the command in Germany illegally refused to process her TERA request. *See* PXC. Lieutenant–Colonel Polen also is identified as the officer who "orchestrat[ed] the illegal conduct." *Id.*

**17.** The question of whether Plaintiff is actually *deserving* of retirement under TERA is non-justiciable. *See Voge,* 844 F.2d at 782 ("[S]trong policy reasons compel courts to allow the widest possible latitude to the armed services in their administration of personnel matters." (citations omitted)). Furthermore, Plaintiff has provided no outside evidence that she has an affirmative right to early retirement benefits. *See* RCFC 12(b)(6).